514 So.2d 661 (1987)
Robin IVEY, Plaintiff-Appellant,
v.
HOUSING AUTHORITY OF the CITY OF MANSFIELD, et al., Defendants-Appellees.
No. 19014-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1987.
Bethard & Davis by James G. Bethard, Coushatta, for plaintiff-appellant.
Rountree, Cox & Guin by Dale G. Cox, Shreveport, for The Housing Authority of the City of Mansfield and Employers Nat. Ins. Co.
Plummer, Means & Burgess by Robert E. Plummer, Mansfield, for The City of Mansfield.
Before HALL, JASPER E. JONES and NORRIS, JJ.
*662 HALL, Chief Judge.
Plaintiff, Robin Ivey, appeals from the judgment of the trial court in favor of defendants, the Housing Authority of the City of Mansfield and Employers National Insurance Corporation, and the City of Mansfield, in plaintiff's action for damages as a result of personal injuries sustained when plaintiff tripped and fell over a parking barrier located in the front yard of a neighbor's duplex in the housing project in Mansfield.
FACTS
On March 17, 1985, at approximately 8 p.m., plaintiff was leaving a neighbor's duplex, located in a housing project in Mansfield, Louisiana, to return to her home. She decided to walk across the neighbor's yard instead of using the paved walkway between her neighbor's porch and the sidewalk or street. The plaintiff tripped and fell over a parking barrier located in the neighbor's front yard at the sidewalk or street, injuring her right hand when a glass she was holding shattered on the concrete sidewalk. The parking barrier was one of 598 which the Housing Authority of Mansfield contracted to have installed in the housing project. The barriers were situated parallel to the sidewalks which were adjacent to the streets. Their purpose was to prevent motorists from driving into the yards and houses in the project. They were constructed of eight foot lengths of iron pipe raised approximately 1 ½ feet above the ground supported by iron posts on each end. A distance of four feet was left between barriers to allow for tenants to walk between them. Installation of the barriers began on March 3, 1985. Prior to beginning work on the barriers, a large sign announcing the construction was placed at the entrance of the project. A tractor with a backhoe was used to install the barriers.
There were street lights located throughout the project but none were in the immediate vicinity of the accident site. The plaintiff testified that the nearest light was approximately 220 feet from the accident site and that the illumination from this light was partially blocked by a duplex. Each duplex had a concrete paved porch with porch lights. The duplex involved in the accident had a concrete paved sidewalk leading to the street. Plaintiff had been a tenant in the housing project for several years prior to the accident. The lease agreement between the Housing Authority and its tenants provided that the Housing Authority was bound (1) to maintain the premises and the project in a decent, safe, and sanitary condition and (2) to keep the project buildings, facilities and common areas, not otherwise assigned to the tenant for maintenance and upkeep, in a clean and safe condition.
Plaintiff had surgery on the fifth finger of her right hand twice as a result of her injury. Plaintiff had to wear a cast and underwent physical therapy. Plaintiff's finger was permanently fused into a bent position during the second surgery, prompting some of her less compassionate friends to refer to her as "Hook" or "Paw". Plaintiff testified that the condition of her finger prevents her from obtaining employment in that most of her work experience and training had been in fields that required use of her hands. Plaintiff was unemployed at the time of the accident but had previously been employed as a short order cook, and as a worker in chicken processing plants, a clothing factory and a toy factory.
Plaintiff alleges that the parking barrier over which she fell created an unreasonable risk of injury in that it was unpainted and the area in which it was located was inadequately lighted. She contends that the Housing Authority, as lessor, was strictly liable for creating a defective condition under LSA-C.C. Art. 2695. Plaintiff also alleges that the Housing Authority was negligent in the construction, placement and maintenance of the barriers.
TRIAL COURT ACTION
After reviewing the evidence, the trial court found that the parking barrier did not present an unreasonable risk of harm and did not render the premises unreasonably dangerous in normal use. It also found that the barrier was not a dangerous condition which would reasonably be expected *663 to cause injury to a prudent person using ordinary care under the circumstances. The trial court concluded that the parking barrier in question did not constitute a defective condition.
The court also found that the tenants and not the Housing Authority were responsible for maintaining the yard areas adjacent to the various apartments and that therefore the area where the accident occurred was not a "common area" for purposes of the application of strict liability. The fact that the accident site was not a "common area" would also preclude liability under the lease according to the trial court.
The trial court also concluded that the barriers were clearly visible on the night of the accident, plaintiff knew the barriers were in place and that she tripped over the barrier because of her lack of attention. The trial court also found that the Housing Authority was not negligent in the construction, placement or maintenance of the barriers.
ASSIGNMENTS OF ERROR
On appeal, plaintiff-appellant asserts the following assignments of error:
(1) The trial court erred when it concluded that the area where the accident occurred was well lighted, when in fact it was very dark.
(2) The trial court erred when it concluded that the barriers were clearly visible on the night of the accident.
(3) The trial court erred when it concluded that the barrier was not a defective condition.
(4) The trial court erred when it concluded that The Housing Authority was not negligent in the construction, placement or maintenance of the barriers.
(5) The trial court erred when it concluded that the accident did not occur in a common area.
(6) The trial court erred when it did not hold The Housing Authority strictly liable for the damages to Robin Ivey.
(7) The trial court erred when it concluded Robin Ivey was at fault.
The plaintiff assigns no error with regard to the rejection of her demands against the City of Mansfield.
APPLICABLE LEGAL PRINCIPLES
LSA-C.C. Art. 2695 provides as follows:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessees; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
LSA-C.C. Art. 2695 governs a lessor's liability to a tenant for damages caused by vices and defects of the thing leased and places upon the landlord the primary obligation to keep the premises in repair. Gele v. Markey, 379 So.2d 763 (La. App. 4th Cir.1979), writ granted, 380 So.2d 623 (La.1979), affirmed, 387 So.2d 1162 (La. 1980); and Buxton v. Allstate Ins. Co., 434 So.2d 605 (La.App. 3d Cir.1983).
In order for a lessee to recover damages from the lessor under this article due to an alleged vice, defect or condition in the leased premises, the burden rests upon the lessee to prove by a preponderance of the evidence that a defect existed in the premises and that the defect caused the damages or losses. Latham v. Aetna Casualty and Sur. Co., 377 So.2d 350 (La.1979); Campbell v. Tidwell, supra; Albritton v. J.C. Penney Co., Inc., supra; and Broome v. Gauthier, 443 So.2d 1127 (La.App. 4th Cir.1983), writ denied, 445 So.2d 449 (La. 1984).
A defect under this article means a condition which presents an unreasonable risk of harm and renders the premises unreasonably dangerous in normal use. Wood v. Cambridge Mutual Fire Ins. Co., 486 So.2d 1129 (La.App. 2d Cir.1986). Where there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's determination, this finding should not be disturbed on *664 review by the appellate court unless it is clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) and Canter v. Koehring Company, 283 So.2d 716 (La.1973).
LIABILITY OF LANDLORD
The primary issue presented by plaintiff-appellant on appeal is whether the barrier on the leased premises was a defect, thus rendering the landlord strictly liable under the provisions of LSA-C.C. Art. 2695. The question presented in this case is whether the trial court was clearly wrong in finding that the barrier did not present an unreasonable risk of harm and thus was not a defect as defined earlier. Based upon our review of the record, it does not appear that the trial judge was clearly wrong.
The evidence at trial established that plaintiff knew that the parking barriers were being installed. She testified that she walked past the area where the accident occurred several times each day on her way to visit friends and relatives living in the project. The evidence does not suggest that the barrier posed any dangers other than those typically associated with a parking barrier. Entrevia v. Hood, 427 So.2d 1146 (La.1983). It was not obstructing a designated walkway nor was it unusually high or low. Parking barriers and curbs are needed and expected alongside streets and sidewalks. Furthermore, the barriers in the Housing Authority were serving a useful purpose. The Director of the Housing Authority testified that there had been several instances before the barriers were installed where automobiles were driven into the yards of the duplexes, occasionally colliding with the buildings themselves, causing considerable damage and risk to human life. There was further testimony that children of the tenants played in the yards and were therefore in danger from the recklessly driven automobiles. Photographs of the barriers subsequent to their installation showing damage done to the barriers by automobiles constituted further evidence of the utility of the barriers.
The trial court correctly found that the barriers did not present an unreasonable risk of harm and that the Housing Authority was not negligent in the construction, placement or maintenance of the barriers. The accident was caused solely by the fault of the plaintiff who could have walked through the four-foot gaps between the barriers or even have stepped over it using reasonable caution without it presenting an unreasonable risk of injury. Alternatively, the plaintiff could have chosen to walk on the cement sidewalk rather than through the yard. As this court noted in Wood v. Cambridge Mutual Fire Ins. Co., supra:
"Yards usually present minor hazards or conditions which could cause an unobservant and inattentive person to trip and fall. Yards can and usually do have irregularities and minor obstacles such as depressions, drains, faucets, trees, shrubs, and tree roots and are not intended or designed for use as a walkway without observation and care as are sidewalks and designated walkways. Such conditions do not amount to defects that present an unreasonable risk of injury to tenants."
For these reasons, the judgment of the trial court in favor of defendants, the Housing Authority of the City of Mansfield and Employers National Insurance Corporation, is affirmed at the cost of plaintiff, Robin Ivey.
Affirmed.