663 So.2d 515 (1995)
Scott M. FREEMAN, M.D.
v.
JULIA PLACE LIMITED PARTNERS and ABC Insurance Company.
No. 95-CA-0243.
Court of Appeal of Louisiana, Fourth Circuit.
October 26, 1995.
Writ Denied January 26, 1996.
*516 Fine & Associates, Richard Ducote, New Orleans, for Appellant.
Scott M. Freeman, M.D., New Orleans, In Pro. Per., Appellant.
Blue Williams, L.L.P., Thomas G. Buck, Metairie, for Appellees.
Before BARRY, BYRNES and LANDRIEU, JJ.
BARRY, Judge.
Scott Freeman sued Julia Place Limited Partners and its insurer for damages sustained when he fell on a spiked security fence which restricts access to the apartment complex owned by Julia Place. Defendants' motion for summary judgment was granted without reasons and Freeman's action was dismissed. Freeman's appeal focuses on the duty owed by Julia Place and asserts that material factual issues preclude summary judgment.[1] We affirm.

*517 Facts

Julia Place is a secured apartment complex with restricted entry through a spiked iron gate. Freeman, a tenant in Julia Place, exited the apartment to walk his dog about 11:00 p.m. He attempted to reenter the gate when he received a page from the hospital where he is a pathologist, but the lock did not open. Freeman alleges that he rang the doorbell to no avail and that he would have called the night watchman from the outside phone but that number was not visible on the outside directory. Freeman states that he climbed atop a two foot wall surrounding a flowerbed next to the gate and attempted to climb over the fence. He fell and severely injured his right forearm on the spiked fence.
Freeman alleged negligence and lessor liability under La.C.C. art. 2695. Defendants moved for summary judgment and asserted that plaintiff's injury was not caused by defendant's breach of a duty and there was no defect to support strict liability. The trial court granted summary judgment without reasons and Freeman appeals.

Negligence
Freeman asserts that Julia Place owed a duty to maintain the premises (and hence the lock on the gate) in a safe manner and that duty encompassed the risk that a tenant would jump the fence and be injured if the lock broke. There are two separate elements to that argument: the existence of a duty, and legal cause (i.e., the scope of the risk or scope of protection afforded by the duty). Freeman argues that Julia Place's breach of its duty caused his injury.
Liability in a negligence case requires proof of five elements: 1) duty; 2) breach; 3) cause-in-fact; 4) legal cause (scope of liability or scope of protection); and 5) damages. Wilson v. Dept. of Public Safety & Corrections, 576 So.2d 490, 493 (La.1991); Fowler v. Roberts, 556 So.2d 1, 4 (La.1989), reh. granted on other grounds and original opinion reinstated as supplemented, 556 So.2d 13 (La.1990), superseded by statute on other grounds as stated in Persilver v. Louisiana Department of Transportation, 592 So.2d 1344, 1347 n. 2 (La.App. 1st Cir.1991).
Wilson and Fowler hold that the duty element is a judge question and the remaining elements are usually jury questions unless reasonable minds could not differ. Wilson, 576 So.2d at 493; Fowler, 556 So.2d at 4-5. Justice Dennis reiterates that holding in his dissent in Roberts v. Benoit, 605 So.2d 1032 (La.1991), on reh. 605 So.2d 1050, 1064 (La. 1992) (Dennis, J., dissenting), where he states that legal cause is an issue of mixed fact and law or policy and "(l)ike the cause-in-fact problem it is a question for the trier of fact unless the issue is so clear that reasonable persons could not differ." But see Ureta v. Louisiana Department of Transportation & Development, 594 So.2d 1111, 1113 (La.App. 4th Cir.1992); Dillon v. Louisiana Power & Light, 557 So.2d 293, 295 (La.App. 4th Cir.1990); Nicks v. Teche Electric Co-op, Inc., 93-1418 (La.App. 3 Cir. 6/1/94), 640 So.2d 723, 726, writ den. 94-1710 (La. 10/7/94), 644 So.2d 640, which hold that duty and scope of protection are legal questions for the court. Ureta, Dillon and Nicks do not mention Wilson or Fowler.

Duty
The existence of the duty is clearly a question of law. Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292 (La.1993). The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim. Id., citing Green, The Causal Relation Issue and Negligence Law, 60 Mich.L.Rev. 543, 562-63 (1962).
Freeman argues that Julia Place had a duty to maintain the lock on the gate. He cites two cases which held that a lessor may be liable for damages to the lessee from a third party intruder if the lessor assumes an obligation of security maintenance. See Thompson v. Cane Gardens Apartments, 442 So.2d 1296 (La.App. 3d Cir.1983); Carline v. Lewis, 400 So.2d 1167 (La.App. 1st Cir.1981). Thompson and Carline are distinguishable because they involve a tort committed by an intruder rather than injury resulting from the lessee's own action.
The parties cite no law nor has this Court found any which imposes a duty on the lessor to maintain a security gate. However, where *518 a lessor provides a locked gate with restricted access to leased premises, it is reasonable to impose upon the lessor a duty to maintain that gate to provide the lessee access and egress to the property.

Cause-In-Fact and Legal Cause
Cause-in-fact and legal cause are generally questions for the jury. Fowler v. Roberts, 556 So.2d at 4-5. The exception is when, under the uncontested facts, reasonable minds could not differ. Id. See Coates v. Nettles, 563 So.2d 1257 (La.App. 1st Cir. 1990), which affirmed summary judgment for the defendant and held that under the undisputed facts the alleged defect was not the cause-in-fact of the plaintiff's injury.
Cause-in-fact is generally a "but for" inquiry: if the plaintiff probably would not have been injured but for defendant's substandard conduct, such conduct is a cause-in-fact. Because substandard conduct does not render the actor liable for all consequences spiralling outward until the end of time, the concept of proximate cause or legal cause (scope of the duty) in the duty-risk analysis is necessary to eliminate liability at some point. Roberts v. Benoit, 605 So.2d at 1052.
The scope of protection (legal cause) inquiry is a question of policy whether the particular risk falls within the scope of the duty. See Faucheaux v. Terrebonne Consolidated Government, 615 So.2d at 292. The duty-risk analysis is "highly fact-intensive" and the legal cause inquiry "factbound." Roberts v. Benoit, 605 So.2d at 1055. Faucheaux v. Terrebonne Consolidated Government, supra, summarizes the test for legal cause:
The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner.... In determining the limitation to be placed on liability for defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced.
Faucheaux, 615 So.2d at 294 [citations omitted]. See also Roberts v. Benoit, 605 So.2d at 1054, which states "the `ease of association' test ... melds policy and foreseeability...."
Julia Place argues that the inoperable lock was neither the cause-in-fact nor the legal cause of the injury, citing Renfro v. South Coast Corp., 374 So.2d 122 (La.App. 1st Cir. 1979). Renfro was a pre-comparative fault case and held that the property owner was not liable for injuries to the occupant when she banged on a door which stuck shut and her hand went through the glass. The court held that the stuck door was "not substandard conduct" by the owner (negligence) and that the owner was not strictly liable because there was no defect unreasonably dangerous to a person using ordinary care. The court reasoned that the accident was caused by the plaintiff's failure to use reasonable care rather than negligence of the owner and dismissed the action based on the plaintiff's contributory negligence.
It appears Renfro was decided after trial. Renfro did not delineate the duty owed, discuss cause-in-fact, or state whether the risk of plaintiff's injury was within the scope of protection. Thus it provides little guidance as to legal causation under these facts.
The record does not contain any depositions or affidavits. Freeman states in answers to interrogatories that he received a page from the hospital where he was on staff, he attempted to enter the gate but his key would not work, he could not see the phone number of the courtesy (security) officer on the outside phone directory, he attempted to climb the gate, fell and was injured. Julia Place does not dispute those facts.
Considering the undisputed facts, the inoperable lock was a cause-in-fact of Freeman's injury. If Julia Place had maintained the lock, Freeman probably would not have jumped the gate and injured himself.
Reasonable minds could not conclude that the non-functional lock was the legal cause of Freeman's injury. Freeman argues it is foreseeable that a tenant who is locked out would attempt to jump the gate and there is an easy association between *519 Julia Place's duty to maintain the gate and Freeman's injury.
The spiked gate is not an ordinary fence and was obviously built as a security gate to prevent access to the premises by an intruder. Freeman's attempt to climb the gate was grossly unreasonable and reckless. A lessor's duty to maintain a security gate lock does not encompass the risk (or even the possibility) that a tenant would attempt to scale such an obviously dangerous gate. We conclude that Julia Place is not liable under the duty-risk analysis as a matter of law.

Lessor Liability
Freeman argues that Julia Place should be held strictly liable because the lock was defective. A lessor's liability to a tenant for damage caused by a vice or defect is governed by La.C.C. art. 2695:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
Article 2695 imposes strict liability. See Westridge v. Poydras Properties, 598 So.2d 586, 589 (La.App. 4th Cir.1992), writs den. 605 So.2d 1092, 1093, 1099 (La.1992). The lessee must prove there was a defect in the premises which caused the damage. Latham v. Aetna Casualty & Surety Co., 377 So.2d 350, 351 (La.1979); Green v. Hodges Stock Yard, Inc., 552 So.2d 435, 439 (La.App. 4th Cir.1989); Ivey v. Housing Authority of Mansfield, 514 So.2d 661, 663 (La.App. 2d Cir.1987).
A defect is a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances, Renfro v. South Coast Corp., 374 So.2d at 124, a condition which presents an unreasonable risk of harm and renders the premises unreasonably dangerous in normal use. Ivey v. Housing Authority of Mansfield, 514 So.2d at 663; Wood v. Cambridge Mutual Fire Insurance Co., 486 So.2d 1129, 1132 (La.App. 2d Cir.1986).
Based on the undisputed facts, the inoperable lock did not constitute a defect under Article 2695. Freeman's reckless act of attempting to scale a spiked security gate was imprudent and not within the ordinary, normal intended usage of the gate. Julia Place is not liable under Article 2695.
We affirm the summary judgment in favor of Julia Place.
AFFIRMED.
NOTES
[1] Freeman dismissed his counsel after his brief was filed. Freeman filed a brief in proper person and represents himself on appeal.