783 So.2d 552 (2001)
Donald DRISCOLL
v.
Joseph PROVENZANO and ABC Insurance Company.
No. 00-CA-1156.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 2001.
Writ Denied June 1, 2001.
*553 Edmund J. Schmidt, III, Jefferson, LA, Counsel for plaintiff-appellant.
Albert D. Giraud, David I. Bordelon, Ungarino & Eckert Law Firm, Metairie, LA, Counsel for defendants-appellees.
Court composed of Judges GOTHARD, McMANUS and GULOTTA, Pro Tempore.
CLARENCE E. McMANUS, Judge.
This matter involves a fall down a flight of steps. Finding no manifest error, we affirm the jury's finding, and the trial court's judgment, that any possible defect in the steps did not cause the fall and resulting injuries.

STATEMENT OF THE CASE
The matter was instituted by Appellant Driscoll's Petition for Damages, filed on March 9, 1999. The petition named Joseph Provenzano as the Defendant, as the lessor of the apartment Driscoll was renting, and on whose premises the accident occurred. An amended petition added as a Defendant Provenzano's liability insurer, Scottsdale Insurance Company.
The Defendants-Appellees answered all petitions, and the matter was set for trial.
*554 Prior to trial, all parties filed requested jury charges; Provenzano filed a requested special verdict form.
The matter was tried on February 7, 8 and 9, 2000. The trial was preceded by a conference regarding the requested jury charges during which attorneys for both parties reviewed the trial judge's prepared charges, and during which each party presented arguments in support of his requested charges. The trial judge did accept some requested charges but rejected several which had been proposed by Driscoll. In addition, the trial judge declined to delete some to which Driscoll objected. After the conclusion of Provenzano's case, and after the jury had retired to deliberate, Driscoll made formal objections to the charges as given.
In response to interrogatories, the jury returned the finding that the "defective condition on the property owned by Joseph Provenzano" had not been "the actual cause of any injuries sustained by Donald Driscoll." A written judgment was signed by the trial court judge on February 11, 2000, in which the judge adopted the jury verdict as the judgement of court.
Driscoll timely filed the instant appeal. He now raises the following errors:
1. The standard of care owed by a lessor to a lessee is strict liability. Article 2695. The Trial Court refused to charge the jury with this standard and improperly charged the jury with a simple negligence standard under Article 2317.1.
2. The Trial Court failed to charge the jury with a correct definition of "defect" and "minimum standards of construction."
3. The landing and stairway were defective which caused Plaintiff to fall.

FACTS
This case arises out of Driscoll's fall down a flight of steps which led up to the apartment he was leasing from Appellee Provenzano. The steps are described in testimony as "A-frame" concrete steps and are described on a blueprint as a "precast concrete stair stringer." Photographs show two sets of stairs set against the side of the apartment building and joined by a landing between them which fronts two doors on the second story of the building. Screen doors on the landing open towards the middle of the landing, with the doors swinging away from the steps as they open. The inner door of each apartment opens into the apartment. Facing the apartment, Driscoll lived in the left Apartment, Apartment A. Driscoll's testimony indicates that he fell all the way from the landing to the bottom of the steps.
Appellee Provenzano testified that he had purchased the apartment building in 1990, and that the condition of the steps had not changed between this date and the date of Driscoll's fall. Provenzano also testified that he knew the building had been built at least thirty years before the accident occurred because he had one tenant, Noah Orlano, who had been living in one of the apartments for this number of years. Provenzano identified income tax forms which indicated that in some years immediately preceding the accident he had spent nothing on repairs to the building. Provenzano also testified that he had not had any complaints about the steps for as long as he had owned the building. Finally, Provenzano stated that the screen door to Driscoll's apartment opened "away" from the steps leading to that door, so that access to the apartment would have been "clear."
Driscoll produced an expert witness, Jerry M. Campbell, an architect, who testified that the landing was defective. *555 Campbell testified that he and an associate had examined the steps and landing and had taken measurements during their examination. Campbell testified that he judged the building, from its appearance, to have been constructed in the 1960's or 1970's, and stated that he had reviewed tax assessment forms for 1977, which he assumed had been the year it was built. He therefore evaluated the design of the landing under several codes, which he stated would have been applicable as of 1977. He stated that the design of the landing was deficient under the 1977 Jefferson Parish Building Code, the 1967 National Building Code, and the Life Safety Code, which is issued by the National Fire Prevention Associations. Campbell testified that the design of the landing was substandard because the screen doors open out onto the landing but do not swing all the way open until they are flush against the side of the building. Campbell testified that this configuration would "obstruct" entrance to the apartments as the screen doors are opened by anyone standing in the middle the landing, and would further violate all three of the above building codes, which require that landings are designed so that a certain minimum number of inches remain between a partially opened door and the railing of the landing. Campbell opined that the landing was defective and unreasonably dangerous because, "When the door's opened, you can't get between the railing and the edge of the door."
On cross examination, Campbell admitted that had the apartment building been built before 1977, the above codes would not apply to its design. Further, on cross examination, he could not state without equivocation that the screen doors could not be pulled completely open to rest against the side of the building.
Provenzano's expert, architect Charles Silbernagel, testified that the landing complied with codes in effect at the time the building had been constructed, which had been at least as early as 1960. Silbernagel had determined the date of construction by calling the parish assessor's office, which indicated that as of this date taxes were assessed against improvements on the lot at the address in question. Silbernagel testified that the design of the landing complied with regulations set out in the 1952 Jefferson Parish Building Code and the applicable code (of an unspecified date) issued by the National Fire Prevention Associations. Further, he stated that even when the screen door to Driscoll's apartment is pulled open to form a ninety degree angle with the side of the building, the space between the open door and guardrail was adequate under the applicable codes.
Appellant Driscoll testified that he had been living in Apartment A for about two weeks before the accident occurred, and his description of the fall is as follows. He testified that he had fallen as he was crossing the landing after having climbed the steps on the farther side from his apartment:
"When I got on the top landing, going to our apartment, I was walking across the landing and our door, our screen door has a right hand swing; it opens left. And as I grabbed the handle to open it, to step around it, I didn't trip over anything, my left foot, thinking I was still on the landing, my left foot went offslipped off there and I took a roll."
Driscoll testified that he had gone up his neighbor's steps to take a short cut from his parked truck to his door. He stated that he had opened the screen door "only part of the way" and attempted to "squeeze" past between the door and guardrail. He did admit that even from this approach, he would have been able to *556 swing the screen door completely open so that it did not block his path, and he also admitted that had he gone up the steps closer to his own apartment, his entrance to the apartment would have been "unobstructed." Finally, Driscoll acknowledged that he may have been "partially at fault" in the accident.
Driscoll's ex-wife, Carol Sue Driscoll, had been following Driscoll up the steps when he fell and saw him fall, but did not see what caused the fall.
There was some evidence that Driscoll had been drinking during the evening before the accident, and that perhaps his intoxication contributed to the fall. He and Carol Sue admitted that they had each had two beers at dinner earlier that evening, but Driscoll denied that he had been drunk when he fell. Dr. Matko Milicic, who treated Driscoll at the VA hospital, noted by way of deposition testimony that ER records from the hospital indicate that Driscoll had been "drinking" on the evening the accident occurred.
There is no question that Driscoll was very seriously injured in the fall. He suffered a fracture to his neck, was in traction for a week immediately following the accident, and ultimately underwent surgery to repair the fracture. Following the surgery, he had been almost completely immobilized for almost a month.

ASSIGNMENTS OF ERROR NUMBERS 1 AND 2
As his first two assignments of error, Driscoll argues that erroneous jury instructions led to an insupportable jury verdict. Driscoll first argues that the trial judge was not correct to charge the jury with "simple negligence" under LSA-C.C. art. 2317.1: he argues that the correct instruction would have been a charge describing the strict liability created under LSA-C.C. art. 2695. He further argues that the trial judge's instructions did not include the correct definition of a "defect" which will give rise to premises liability. And finally, he argues that the trial judge should have instructed the jury on "costs" and "feasability of repair" to the defective stairs and landing. However, because the jury found no causation, any possible error in the instructions complained of cannot have contributed to the verdict.
Regarding this issue, we note that
Adequate jury instructions are those which fairly and reasonably present the issues and which provide correct principles of law for the jury to apply to those issues. In making charges to a jury, a trial judge is not required to give the precise instructions submitted by either party, but must give instructions which properly reflect the law applicable in light of the facts of the particular case.
. . . .
[A]n appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial.
. . . .
The pertinent question involved in deciding whether reversible error has occurred is whether the jury was misled to such an extent as to prevent it from doing justice.
Goodman v. Allstate Ins. Co., 98-732, at 3-4 (La.App. 5 Cir. 5/19/99), 736 So.2d 310, 312.
Driscoll complains that the trial judge should have instructed the jury on strict liability under LSA-C.C. art. 2695, and cites as error the judge's having instead instructed the jury under LSA-C.C. art. 2317.1, which would incorporate an element of knowledge of any defect in the landing for Provenzano to be held liable *557 for Driscoll's injuries. However, as noted, without specifically finding that the landing is defective, the jury found that any possible defect had not "actually" been the cause of Driscoll's injuries: the jury found that Driscoll had failed to prove even cause-in-fact. Therefore, the precise theory of liability, and whether or not knowledge is factor in a determination of fault, are principles which did not play any part in this determination.
Nor does the charge which included the definition of a "defect" directly contribute to a finding on cause-in-fact. The question, as posed to the jury"was the defective condition on the property owned by Joseph Provenzano the actual cause of any injuries sustained by Donald Driscoll"in fact, seems to presuppose that the landing was defective. Nevertheless, the jury found that this defect had not been the "actual" cause of Driscoll's injuries.
For the same reasons, any instructions on the cost and feasibility of repair to the "defective" landing would have been of no moment in the jury's determination on causation. While these instructions might have been proper, and necessary, for a correct determination of proximate cause, they have no bearing on a determination of cause-in-fact.
On the record as a whole, most significantly Driscoll's own description of the fall, since we cannot say that the jury was manifestly erroneous in finding no causation, it follows that we cannot say that the complained of jury instructions prevented the jury from doing justice in reaching their verdict.

ASSIGNMENT OF ERROR NUMBER 3
As his final assignment of error, Driscoll argues that the jury was in error to not find that "the landing and stairway were defective which caused plaintiff to fall."
As discussed above, without making any finding that the stairway was defective, the jury found that this "defective condition" had not been the actual cause of Driscoll's injuries. This finding is not manifestly erroneous.
Driscoll urges liability on Provenzano's part under LSA-C.C. art. 2695:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
To recover under this Article, the lessee must prove by a preponderance of the evidence that a defect existed on the premises and that such defect was the cause of [his] damages or losses. McGinty v. Pesson, 96-850, at 6-7 (La.App. 3 Cir. 12/11/96), 685 So.2d 541, 544-5. See also Ivey v. Housing Authority of City of Mansfield, 514 So.2d 661, 663 (La.App. 2 Cir.1987).
The question of cause-in-fact involves a factual determination. Todd v. State Through Dept. of Social Services, Office of Community Services, 96-3090, at 6 (La.9/9/97), 699 So.2d 35, 39. Further, proof to substantiate a claim for damages must be clear and definite and not subject to conjecture. Todd, 96-3090 at 16, 699 So.2d at 43.
Driscoll himself could not precisely state why any possible defect on the landing had caused him to fallhe had no explanation for why he had fallen. Nor did his witness, *558 his ex-wife Carol Sue, know how he had fallen. There is no question, therefore, that had the jury attributed the cause of the fall to some possible defect in the landing, this finding would be of a speculative nature. And we cannot ignore Driscoll's admission that he might have been at fault in the accident.
The jury's findingthat any possible defect in the landing had not "actually" caused Driscoll's injuriesmay not be set aside in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) (citations omitted); Oubre v. Union Carbide Corp., 99-63, at 6 (La.App. 5 Cir. 12/15/99), 747 So.2d 212, 219 (citations omitted). We see no manifest error in the jury's finding here.
Moreover, on the record, neither do we find that Driscoll was able to prove the existence of a defecteven had he proved cause-in-fact, he did not prove that any defective condition had been the proximate cause of his injuries.
A defect [under LSA-C.C. art. 2695] is a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances. Freeman v. Julia Place Ltd. Partners, 95-0243, at 7 (La.App. 4 Cir. 10/26/95), 663 So.2d 515, 519, citing Renfro v. South Coast Corp., 374 So.2d 122 (La. App. 1 Cir.1979). The article, therefore, recognizes the possibility that even defective premises may be inhabited and utilized by a person exercising prudence and ordinary care. To show a defect, the lessee must show that the defect prevented use of the premises in question.
Driscoll was not able to show as much. He himself admitted that there were two ways to access his apartment that would have been safehe could have climbed the stairs nearer his own apartment, or he could have swung his screen door wide enough to allow him to pass between the door and rail without any difficulty. Further, the lessor, Provenzano, testified that he had received no complaints about the landing for as long has he had owned the building. Finally, we need not concern ourselves with Driscoll's possible intoxication on the evening in question: his own testimony reveals the carelessness which caused the accident, and the causes underlying the careless acts have no relevance here.
There is no question that Driscoll fell down the steps in question; there is no question that he was very seriously hurt. However, these two facts, without more, are not sufficient to require a finding that Provenzano was at fault for the accident. Our laws do not establish even tremendous sympathy for an injured victim as a legitimate basis for awarding damages, and we are without authority to overturn the jury's finding that Provenzano's possible breach of duty to Driscoll "actually" caused Driscoll's injuries.
The judgment of the trial court is affirmed, with each party to bear his own costs of appeal.
AFFIRMED.