689 So.2d 659 (1997)
Aquanetta DEMERY, individually and for the use and benefit of her minor son, Alan Demery; and for the use and benefit of her minor daughters Dione Demery, Jean Marie Demery, Karen Demery, Rayve Demery, Nicole Robinson and Alvin Gene Doughty
v.
The HOUSING AUTHORITY OF NEW ORLEANS, a/k/a HANO.
No. 96-CA-1024.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1997.
*661 Clifford E. Cardone, Cardone Law Firm, New Orleans, for Appellee.
Henry P. Julien, Jr., Julien & Julien, New Orleans, for Appellant.
Before BYRNES, JONES and LANDRIEU, JJ.
LANDRIEU, Judge.
This case stems from an incident in which Alan Demery fell out of a hole in an apartment building stairwell of the St. Bernard Housing Development which is owned and operated by the Housing Authority of New Orleans (HANO). After a trial on the merits, the trial court rendered judgment in favor of the plaintiffs which HANO now appeals. We affirm as amended.

FACTS
On October 16, 1990, sixteen year old Alan Demery was standing in the stairwell on the third floor that led to his mother's apartment where he resided with his family. In the exterior wall of the stairwell was a large unprotected opening 27 1/2 inches from the floor. The hole had been originally cut to *662 house a window frame, mullions, and window panes, however, the window unit was never installed. The opening remained for nine years before the accident even though HANO had conducted extensive repairs in the St. Bernard Development during that time.
While Alan was talking with Shombie Miller, a new neighbor, he leaned against the window opening, with his left buttock resting against the bottom of the opening. Somehow Alan lost his balance and fell backwards out of the opening. He struck an overhang two floors below and landed on a concrete driveway 22 feet below the opening.
Alvin Doughty, Aquanetta Demery, Alan's mother, and all of Alan's sisters rushed outside and found him face-down on the ground. When Doughty rolled him over, Alan was making gurgling noises and foaming at the mouth. He was brought to Charity Hospital and given an admitting diagnosis of a skull fracture, a subarachnoid hemorrhage and a frontal lobe contusion. He remained in the Neurosurgical Intensive Care Unit for 42 days and in the General Neurosurgical Unit for another 22 days. At that time he was diagnosed with a severe brain injury, bilateral optic atrophy, internuclear ophthalmoplegia, and a severe high frequency impairment in his right ear.
While in the Intensive Care Unit, Alan developed gastrointestinal bleeding. To identify which areas of the stomach were bleeding, a lighted tube was placed down Alan's throat and into his stomach. As a result of this invasive procedure, Alan developed Adult Respitory Distress Syndrome which necessitated the insertion of an endotracheal tube. He subsequently developed pneumonia requiring prolonged life support vis-a-vis a tracheostomy. His severe pneumonia compromised his lungs and led to a partial collapse of one of his lungs.
Alan had been discharged from Charity Hospital for only 12 days before he was admitted to the Children's Rehabilitation Unit. He remained for another 39 days to relearn basic daily living skills. Altogether, Alan spent 103 days in the hospital as a result of his injuries.
Examination by Dr. William F. Black, a neuropsychiatrist with the Tulane Medical Center, indicated that Alan suffered a closed head injury as the result of his fall which has manifested with clinically significant cognitive dysfunction attributable to persistent central nervous system impairment. He suffers from poor emotional control and severe clinical depression. He has difficulty with recall of recent information, attention and concentration, emotional functioning, impulsivity, auditory learning and recall, problem solving, psychomotor sequencing, and upper extremity gross and fine motor control and dexterity.
Aquanetta Demery, Alan's mother, sued HANO to recover damages for his injuries. The trial court found HANO liable for Alan's injuries and awarded him $126,805.26 in past medical expenses subject to intervention of $104,524.25 to the Medical Center of Louisiana at New Orleans[1]; $397,938.00 in future medical and life care expenses; $27,284.00 in past lost wages; $423,485.00 in loss of earning capacity; $750,000.00 in general damages plus interest from the date of demand until paid; and all costs of the proceeding. LeJeune damages were awarded as follows: Aquanetta Demery was awarded $50,000.00; Alvin Gene Doughty, as Alan's biological father, was awarded $25,000.00; and Alan's sisters, Dione Demery, Jean Marie Demery, Karen Demery, Raven Demery, and Nicole Robinson, were awarded $2,500.00 each. All awards were reduced by 35%, the trial court's allocation of Alan's fault.
HANO asserts that the trial court erred:
(1) In allotting only 35% of the fault to Alan and no fault to his mother and Alvin Doughty;
(2) In finding that the open window was the cause-in-fact of Alan's injuries;
(3) In ruling that the open window was a defect for which HANO had actual or constructive notice;
*663 (4) In awarding any damages to Alvin Doughty; and
(5) In awarding excessive damages.

ASSIGNMENT OF ERROR NO. 1
HANO contends that the trial court erred in not assigning a greater percentage of fault to Alan Demery and in not assigning any fault to Aquanetta Demery and Alvin Doughty.
First, HANO argues that Alan was at fault for his injuries because he knew of the danger involved sitting in an open window because of repeated warnings he received from his mother. La. Civ.Code art. 2323 states:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree of percentage of negligence attributable to the person suffering the injury, death or loss.
It is the task of the fact finder to allocate shares of negligence. Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 973 (La.1985). In Watson, the Court identified the factors that influence the respective degrees of fault as:
(1) Whether the conduct resulted from inadvertence or involved an awareness of the danger;
(2) How great a risk was created by the conduct;
(3) The significance of what was sought by the conduct;
(4) The capacities of the actor, whether superior or inferior; and
(5) Any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Id. at 974. These factors are factual considerations and must be reviewed under the clearly wrong/manifest error standard. Socorro v. City of New Orleans, 579 So.2d 931, 942 (La.1991).
The fourth Watson factor, i.e. the capacity of the actor, is critical to the allocation of fault in the case at hand. We must determine whether the child, considering his age, background, and inherent intelligence, indulged in gross disregard of his own safety in the face of known and perceived danger. Fields v. Senior Citizens Center, Inc. of Coushatta, 528 So.2d 573, 581 (La.App. 2d Cir.1988).
When determining negligence, a child is not held to the same standard as an adult and the child's actions, "must be judged by his maturity and capacity to evaluate the circumstances." Frelow v. St. Paul Fire & Marine Ins. Co., 93-759 (La.App. 3d Cir. 2/2/94), 631 So.2d 632, 636. According to Dr. William Black, Alan's predicted pre-injury intelligence quotient was 77 which would have placed him in the borderline range of intelligence. Dr. Kim VanGeffen, a clinical psychologist, predicted Alan's intelligence before the accident might have been only slightly higher. Considering Alan's age coupled with his diminished capacity, we cannot say that the trial court was manifestly erroneous in attributing 35% of the fault to Alan.
HANO further contends that Alan's mother should have been found at fault because she did not move out of the housing complex even though she was aware of the danger of the open window. We disagree. Alan's mother had a duty to warn him against leaning in the window, which she did, and she had a duty to alert HANO of the danger, which she did. However, we are not prepared to extend her duty to uproot her family in order to find other housing because HANO choose not to correct a known dangerous situation. We find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 2
HANO asserts that the trial court erred in finding that the open window was the cause-in-fact of Alan's injuries. We review the trial court's determination of such a factual finding under the manifest error rule. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106, 1111-1112 (La.1990).
*664 HANO argues that because Alan, who suffered brain damage as a result of the fall, cannot now remember the details of how he fell, causation was not proved. Cause-in-fact is generally a "but for" inquiry; that is, if the plaintiff probably would not have sustained the injuries "but for" the defendant's substandard conduct, such conduct is a cause-in-fact. Fowler v. Roberts, 556 So.2d 1, 5 (La.1989). The cause-in-fact inquiry is a neutral one, free of the entanglements of policy considerations; it is irrelevant in determining cause-in-fact whether the defendant's actions were lawful, unlawful, intentional, unintentional, negligent or non-negligent. Roberts v. Benoit, 605 So.2d 1032, 1042 (La.1991).
The only question we must ask is whether Alan would have fallen out of the opening in the hallway had HANO installed a window in the opening. The obvious answer is "No." Had a window been in place, there would not have been such a large opening out of which Alan could have fallen. We find no error in the jury's determination that the opening in the exterior wall of the hallway was the cause-in-fact of the injuries Alan suffered.

ASSIGNMENT OF ERROR NO. 3
HANO contends that the trial court erred in ruling that the open window was a defect, and, in the alternative, the trial court erred in finding that HANO had actual or constructive notice of the defect.

Defect
The trial court found that the opening in the hall stairwell was a defect. A defect is a dangerous condition which presents an unreasonable risk of harm and renders the premises unreasonably dangerous for normal use. Ivey v. Housing Authority of Mansfield, 514 So.2d 661, 663 (La.App. 2d Cir.1987).
HANO argues that the opening was not unreasonably dangerous because there are other similar openings in the St. Bernard Projects and "there was no evidence introduced of other incidents [which] tends to prove that this condition was not a defect at all ..." We disagree. A situation is not determined to be unreasonably dangerous by the number of accidents that occur, but whether the defect, a three by five foot opening 27 1/2 inches off the floor, rendered the premises unreasonable dangerous for normal use. Holt H. Fastring, an expert in mechanical engineering, testified that the opening was a safety hazard because the sill was so low. He stated that it should have been at least 36 inches high, which is the minimum height for most handrails. The existence of the opening 27 ½ inches from the ground with no protective slats violated both ANSI and OSHA safety codes that were in effect at the time of the accident. Also, the New Orleans Building Code stated that handrails for balconies should be no less than 36 inches in height.

Notice
Demery, in her brief, presumes that the court's finding of strict liability was based on La. Civ.Code arts. 2317, 2322, and 2695, although the reasons for judgment do not reference any Article.[2] Demery asserts that no actual or constructive knowledge of the defect was required under Article 2317. HANO disagrees claiming that because it is a public entity, the 1985 legislative enactment of La.Rev.Stat. 9:2800 is applicable. The statute added the element of notice to La. Civ.Code art. 2317 claims against public bodies as follows:
A. A public entity is responsible under Civil Code Article 2317 for damages *665 caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
E. "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.[3]
(Emphasis added.)
We agree with Demery that actual or constructive notice was not required. La.Rev. Stat. 9:2800(A) excludes the requirement notice for defects of buildings.
Nevertheless, a review of the record indicates that HANO had both actual and constructive notice. The opening existed for nine years prior to Alan's fall and was clearly visible to even the most casual observer. Mrs. Demery testified that she orally complained of the opening to HANO every time she renewed her lease. Additionally, HANO did extensive repairs to the building in which the Demerys lived while the opening was present. Therefore, HANO was aware of the opening and had notice.
We find that the record amply supports the trial court determination that the opening was a defect and that HANO is liable for the injuries Alan suffered because of this defect.

ASSIGNMENT OF ERROR NO. 4
HANO asserts that the trial court erred in awarding damages to Alvin Doughty. Under LeJeune v. Rayne Branch Hospital, 539 So.2d 849 (La.App. 3d Cir.1989), writ granted, 541 So.2d 861 (La.1989), aff'd, 556 So.2d 559 (La.1990)[4], the father of an injured person who views the event causing injury to the person, or who comes upon the scene shortly thereafter, may recover damages for mental anguish or emotional distress that he suffers as a result of the other person's injury. At issue is whether Alvin Doughty is Alan Demery's father.
Aquanetta Demery testified that Alvin Doughty is Alan's biological father. She explained that Alvin Doughty has resided with her off and on for years and has contributed to her household on occasion, but was not listed on the HANO lease as a resident of her household.
Mrs. Demery testified that her husband, Irone Demery, died in April of 1986. Although Mr. Demery divorced Mrs. Demery before his death, they were legally married in 1984 when Alan was born. Mrs. Demery testified that Mr. Demery is listed on Alan's birth certificate as his father.
The husband of the mother is presumed to be the father of all children born or conceived during the marriage. La. Civ. Code art. 184. However, this presumption is rebuttable. La. Civ.Code art. 187 states, in pertinent part, that "[t]he husband can disavow paternity of a child if he proves by a preponderance of the evidence, facts which *666 reasonable indicate that he is not the father." La. Civ.Code art. 189 states
A suit for disavowal of paternity must be filed within one hundred eighty days after the husband learned or should have learned of the birth of the child; but, if the husband for reasons beyond his control is not able to file suit timely, then the time for filing suit shall be suspended during the period of such inability.
There is nothing in the record to indicate that Mr. Demery disavowed paternity of Alan Demery. If a timely disavowal action is not brought, the presumption is irrebuttable by the husband. Smith v. Dison, 95-0198 (La.App. 4th Cir. 9/28/95), 662 So.2d 90, 93.
Biological fathers may bring avowal actions. Smith v. Cole, 553 So.2d 847, 851 (La.1989); Gnagie v. Department of Health and Human Resources, 603 So.2d 206, 211 (La.App. 1st Cir.1992), writ denied, 608 So.2d 174 (La.1992). La. Civ.Code art. 208 and 209 also give the mother or the child the right to bring a filiation proceeding. Smith v. Cole, 553 So.2d at 854. However, the record is silent as to any action brought to avow Doughty's paternity by Doughty, Mrs. Demery, or Alan. A biological parent who knows of or has reason to know of the existence of his biological child and who fails to assert his rights for a significant amount of time, cannot come forward later and assert paternity. Smith v. Jones, 566 So.2d 408, 414 (La.App. 1st Cir.1990), writ denied, sub nom., Kemph v. Nolan, 569 So.2d 981 (La. 1990).
The evidence presented was insufficient to prove that Doughty was Alan's biological father and to rebut the presumption that Mr. Demery, who was married to Mrs. Demery at the time of Alan's birth and listed as Alan's father on his birth certificate, was not Alan's father. The trial court erred in awarding such damages.

ASSIGNMENT OF ERROR NO. 5
HANO asserts that the trial court awards for general damages and loss of future wages are excessive. The trier of fact's discretion in awarding general damages is great and the appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), cert. denied, sub nom., 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). In this case, the trial court awarded $750,000.00 in general damages. The initial inquiry must be whether this award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Id. at 1260.
The record reflects that Alan spent 103 days in the hospital after his fall, of which 64 days were spent in an acute care hospital setting. During his hospital stay, he developed gastrointestinal bleeding, Adult Respiratory Distress Syndrome, severe pneumonia, and several blood infections. Also, he endured a partial collapse of one lung, insertion of an endotracheal tube as well as a central line catheter through his chest wall, and a tracheostomy.
As a result of his accident Alan suffered a closed head injury characterized by bifrontal and inferior medial frontal damage as well as two cystic lesions in the pons. He has problems with balance, a significant loss of vision in his right visual field, deficits in his short term memory, attention and concentration skills, and impaired manual strength and dexterity. He has a severe high frequency impairment in his right ear for which he wears a hearing aid. If in the heat for any extended period of time, Alan becomes dizzy.
Alan experiences bouts of clinical depression marked by decreased sleep and a weight gain of almost 100 pounds. He has poor emotional control and is confused in his thought processes. Even several years after his injury, Alan continued to show clinically significant cognitive dysfunction attributable to a persistent central nervous impairment.
At the time of his last neurological assessment, Alan was 20 years old. Because there is no prognosis for improvement, Alan is expected to remain impaired for the rest of his life, which is estimated to be another 60 years. The trial court did not abuse its discretion in the general award rendered.
HANO argues that the record does not support a $423,485.00 loss of earning capacity award. The standard of review is abuse of *667 discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). The record indicates that prior to Alan's accident, he was a poor student but had some experience doing manual labor earning $5.42 per hour.
Since the accident, Alan has limited physical strength and dexterity. He easily gets overheated causing dizziness. He has poor balance, has a cane to use when walking, and cannot drive a car. Because of his poor cognitive functioning, he has trouble remembering what he has just been told and becomes confused easily.
Dr. Thomas Meunier, Jr., a vocational rehabilitation counselor, submitted a report into evidence which states that Alan cannot compete in the current labor market due to his myriad of physical, cognitive, and emotional difficulties. He further stated that head-injured individuals, such as Alan, usually cannot maintain even supported or sheltered employment for any extended amounts of time. He opined that Alan has sustained a 100% loss of earning capacity. Dr. Black concurred that Alan is not competitive in today's labor market.
Dr. Melville Wolfson submitted a report that, based on an earning loss of $9,836.00 per year[5], with an incremental rate of 6% and a discount rate of 7.5%, Alan's total loss of earning potential would be $423,485.00, the amount that the trial court awarded. There was no testimony to contradict these figures, and we find no abuse in the trial court's award.
Accordingly, we affirm the trial court's finding that HANO was 65% liable for Alan's fall and that Alan was 35% at fault. We affirm all awards to Alan. We reverse the trial court award of LeJeune damages to Alvin Doughty but uphold the damages to Alan's mother in the amount of $50,000.00 and his siblings in the amount of $2,500.00 each.
AFFIRMED AS AMENDED.
NOTES
[1] The Medical Center is the former Charity Hospital.
[2] The trial court stated:

The opening from which Alan fell was originally built as a window. It was designed to have a window frame and panes, but for more than nine years preceding the accident, the glass and frame had been missing. The apartment building from which Alan fell was owned, leased and/or managed by the Housing Authority of New Orleans (HANO) at the time of the accident. HANO did extensive repairs during the mid-1980's at the St. Bernard Projects. HANO did not at that time nor at any other time repair the hole in the exterior wall of the stairway landing by installing glass, bars, slats, or grill work. Both the plaintiff and defendants hired expert engineers who testified via deposition concerning the safety of the opening. Both testified that the opening was a defective condition. It is obvious to this Court that the openings were a defect in the building. This is common sense.
[3] This statute was revised, effective November 23, 1995, to include in Paragraph E: "Public entity also includes housing authorities, as defined in R.S. 40:382(1) and commissioners and other officers and employees." This amendment codifies previous jurisprudence. See Fox v. Housing Authority of New Orleans, 605 So.2d 643 (La.App. 4th Cir.1992), writ denied, 607 So.2d 570 (La.1992); see also La.Rev.Stat. 40: 381 et. seq.
[4] This jurisprudence was later codified by La. Civ.Code art. 2315.6.
[5] This figure was derived from the median earnings for a black male, aged 25 years or older, with less than a ninth grade education as provided by the U.S. Department of Commerce, Bureau of Census, in 1992.