757 So.2d 866 (2000)
Eden LABOUISSE, Individually and as the Natural Tutrix of Her Minor Child, Winston Labouisse
v.
ORLEANS PARISH SCHOOL BOARD.
No. 99-CA-1684.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 2000.
*868 Joseph G. Albe, Metairie, Attorney for Plaintiff/Appellant, Eden Labouisse/Winston Labouisse.
Clare Jupiter, Bryan & Jupiter, New Orleans, Attorney for the Defendant/Appellee, Orleans Parish School Board.
Court composed of Judge WILLIAM H. BYRNES, III, Judge PATRICIA RIVET MURRAY and Judge ROBERT A. KATZ.
MURRAY, Judge.
Plaintiffs, Eden Labouisse and her son, Winston, appeal a judgment granted in their favor on the basis that the award is insufficient to compensate for the damages incurred. Additionally, they contend that the trial court erred in not awarding damages to Eden Labouisse under La. Civ. Code art. 2315.6. Defendants, the Orleans Parish School Board and its employee, Louis Landrum, also appeal claiming that the trial court erred in not finding Winston Labouisse and his playmate at fault for the accident. For the following reasons, we affirm.

FACTS:
Winston Labouisse and two other boys were playing during recess at Lusher Extension School on April 27, 1993. The three boys were attempting to move a tether ball pole from near a building further out into the yard. The pole was encased in a tire filled with cement, with additional cement on top, making the pole extraordinarily heavy. One of the boys lost his grip on the pole, which flew upward, striking Winston in the forehead. Winston was helped to the teacher's lounge where he rested on a cot until his mother arrived. His mother and sister, Kate, also a student at Lusher, took him to the emergency room at Children's Hospital, where he was examined and diagnosed with a concussion. Winston was discharged that evening. Upon awakening the next morning, Winston could not gain his balance to walk and was taken back to the emergency room.
Dr. Nancy Rogers, a neurosurgeon, was consulted about Winston's head injury. Her testing revealed problems with equilibrium and balance. Initially, she diagnosed him as having post-concussion syndrome and a closed-head injury, and advised Ms. Labouisse that Winston could experience headaches, cognitive problems and behavioral changes. After continued treatment of Winston, Dr. Rogers' final diagnosis was that Winston suffered from organic brain syndrome[1], a condition that causes personality changes, increased impulsivity, lack of emotional control and decreased memory.
Dr. R. Timothy Brown, a psychiatrist, first saw Winston in November of 1994 in the Children's Hospital emergency room. Winston's mother was summoned home by her youngest son because Winston was riding his bike incessantly in circles in the yard. She took him to Children's where it was determined that Winston had taken LSD earlier that day and was involved in a minor accident on his bike. After taking a medical history, and examining Winston, he also diagnosed organic brain syndrome. He observed Winston to have a flatness of emotional expression, sudden outbursts of temper, problems with sequencing and processing emotional cues.
*869 Dr. Catherine Reichard, the neuropsychologist who performed two neuropsychological evaluations on Winston while he was an in-patient at the New Orleans Adolescent Hospital (NOAH), testified that the initial evaluation revealed a frontal lobe dysfunction, but the second evaluation performed one year later in November of 1995, showed much improvement. For example, Winston demonstrated more range of emotion, less memory problems, and the scores on the abstract thinking portion of the test were back to normal. He was still, however, demonstrating some difficulties in inhibiting responses and was still denying the severity of his problem.

DISCUSSION:

A. Plaintiffs' appeal:
In plaintiffs' first assignment of error, they claim that the trial court erred by awarding damages insufficient to compensate for the damages sustained. After a bench trial, the court awarded Winston a lump sum of $450,000, and awarded Eden $10,000 for loss of services and society and $9,747.04 for past medical expenses. Plaintiffs contend that the awards should have been $3,940,000 for Winston, and $310,000 for Eden.
Much discretion is accorded the trier-of-fact in fixing damage awards. Because of this vast discretion, an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The initial inquiry to be made by this court is whether the damage award for the particular injuries suffered and their effects under the particular circumstances is a clear abuse of the "much discretion" of the trier-of-fact. Id. at 1260.
The record reflects that Winston suffered a large bruise to his forehead after being struck by the tether ball pole. One of his playmates estimated that he was unconscious for about five minutes, although other evidence suggests that it was for a much shorter period. He was treated at the emergency room, and released, returning the next day for a balance problem. After some additional testing, he was again sent home with instructions to rest. He missed approximately two weeks of school, but returned to complete the sixth grade.
In the fall of 1994, near the beginning of eighth grade, Winston ingested the hallucinogenic drug, LSD, and was hospitalized at NOAH for psychiatric testing and substance abuse counseling. At that time, it came to light that he had been experimenting with alcohol and marijuana in addition to the LSD. There was conflicting testimony about Winston's school performance, although the records confirm that his grades had declined from the sixth grade. However, he was still capable of passing the entrance examination, and was admitted to Benjamin Franklin High School for the ninth grade.
All of the doctors who testified agreed that Winston's psychological problems were related to his head injury. They also agreed, however, that there were many additional factors contributing to his behavior, including his drug abuse, the reappearance of his father into his life after many years of absence, and his father's eventual suicide.
The record also contains testimony of one of Winston's fifth grade teachers indicating that he was having some minor difficulties with organization, and was not performing to the best of his ability before the accident. Ms. Cunningham, who taught Winston in her social studies, science and gifted resource classes, described him as very intelligent but unmotivated, except when it was something he was really interested in such as art. The basis for her opinion was that Winston did not always study for tests, was disorganized, and demonstrated a lack of overall effort.
Dr. Ralph Chester, a board certified psychologist in both general and child psychology and a consultant for the Orleans Parish School Board, was consulted by the *870 administration at Lusher Extension School after Winston stayed away from home overnight early in 1994. Dr. Chester testified that Winston's mother told him that Winston started experiencing some change in his personality with occasional outbursts of anger, moodiness and irritability, in the fourth or fifth grade. Dr. Chester also obtained a school history from Ms. Petrosini, the social worker and child advocate at Lusher. The history included information that over the last year and a half Winston's school social peer group had changed to include "highly eccentric and unproductive peers, some of whom are known to have mental illnesses or very dysfunctional background." Dr. Chester testified that this history was related to Ms. Labouisse and was not refuted.
The trial court also heard the testimony of Winston Labouisse, who was seventeen years old at the time of trial. Winston testified that he believed his school performance dropped off in the eighth grade because of his own procrastination. When asked why he started running away from home, he stated that he just wanted to do what he wanted to do. Winston testified that he had been drug free, both of illegal and prescription drugs, for one year. He had obtained his GED while a resident at Foundation House, and had been working at a part-time job helping to renovate a house. Winston was optimistic about his future, explaining to the court that he was interested in enrolling in an art school in New York that his sister recommended. He was in the process of putting together his portfolio, which he remarked was "very good," and would apply to the school when the portfolio was completed. Winston explained that the artwork included in his portfolio was recent work completed after leaving Foundation House.
Dr. Reichard testified that, as of the her last visit with Winston, she believed Winston could eventually function on his own, but for the immediate future he would need a well-structured environment, similar to that at NOAH, to learn to organize himself and control his emotional outbursts. Dr. Reichard stressed that Winston's eventual recovery was dependent on his not abusing drugs.
Considering that at the time of trial, according to both Winston and his mother, he had been drug free for one year, had not had any emotional outbursts, and was putting together a portfolio in anticipation of enrolling in art school, we find no abuse of the trial court's discretion, and affirm the award of $450,000 to Winston.
Plaintiffs also claim that the trial court erred in not awarding damages to Ms. Labouisse under La. Civ.Code art. 2315.6, commonly known as Lejeune damages. In reasons for judgment, the trial court stated that although it did not make light of what Ms. Labouisse experienced when she arrived at the school after Winston's accident, it found that her experience did not meet the requirements of the codal article. We agree.
Louisiana Civil Code art. 2315.6 provides, in pertinent part:
A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
* * *
B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.
*871 The determination of whether a person is entitled to damages under La. Civ.Code art. 2315.6 is a finding of fact that shall be disturbed only if manifestly erroneous. See Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615, p. 7 (La.2/20/95), 650 So.2d 757, 762. Ms. Labouisse did not witness Winston's accident, and a substantial amount of time transpired before she arrived at the school. Further, there is nothing in the record to indicate that Ms. Labouisse's mental anguish or emotional distress upon arriving at Winston's school was severe or debilitating. In fact, Ms. Labouisse was able to personally transport Winston to Children's Hospital. We find no error in the trial court's decision.
Plaintiffs also claim that it was error for the trial court to only award Ms. Labouisse $10,000 for loss of consortium. A loss of consortium claim includes the elements of loss of service, loss of love and affection, loss of society and companionship, loss of sexual relations, loss of support, and loss of felicity. Doe v. Roman Catholic Church for Archdiocese of New Orleans, 615 So.2d 410, 417 (La.App. 4 Cir.1993), writ denied. After reviewing the record, we find no abuse of discretion in the trial court's award to Ms. Labouisse. There is no evidence that Winston is not capable of showing affection for his mother; to the contrary, the record is replete with evidence that he has always been and continues to be loyal and loving to his mother.

B. Defendants' appeal:
In their only assignment of error, defendants claim that the trial court erred in not assigning comparative fault to Winston Labouisse and his playmate, Austin Grehan.[2] Specifically, they claim that the children had been warned previously about moving the tether ball pole and playing the "flying game" on it. Because they disobeyed these previous warnings, the trial court should have assigned some degree of fault to them.
Louisiana Code of Civil Procedure art. 2323 provides, in part:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the death, injury, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty,.... If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
It is the task of the factfinder to allocate fault. Demery v. Housing Authority of New Orleans, 96-1024, p. 4 (La. App. 4 Cir. 2/12/97), 689 So.2d 659, 663. These factors considered when determining fault are factual in nature and must be reviewed under the clearly wrong/manifest error standard. Socorro v. City of New Orleans, 579 So.2d 931, 942 (La.1991); Demery, supra.
The trial court specifically found that:
[T]he Lusher Extension School did have an unwritten policy for the movement of poles during school hours, which was informally brought to the attention of some of the students but was clearly disseminated to the teachers, who served as yard monitors. The policy was that the poles could be moved by the students but only under the supervision of a teacher.
The court finds that Mr. Landrum was the teacher assigned as the yard monitor at the time Winston was injured while moving the pole. Mr. Landrum saw the boys moving the pole prior to the accident and did nothing whatsoever *872 to carry out the policy of the school with respect to the movement of a tetherball/volleyball pole by students. He did not stop or supervise them in any way. In fact, he turned completely from the boys moving the pole and the next thing he knew about the movement of the pole was the notification from a student that Winston had been injured. The court finds that Mr. Landrum bears the full responsibility for the trauma sustained by Winston because of his failure as the yard monitor to carry out the school's policy, which was designated for the safety of students.
Both Winston and Austin Grehan testified that they remember being told not to play the "flying game" with the tetherball pole, but neither remembered being told not to move the poles without supervision. The teachers who testified about their knowledge of school yard safety policies all stated that the children were aware that they were not to move the poles unsupervised. Regardless of this conflict in testimony, it remains the fact that Mr. Landrum admitted that he saw the children moving the pole unsupervised, and did nothing to stop them. Thus, we find no error in the trial court's allocation of fault.
Accordingly, for the reasons assigned above, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Several of the doctors who testified stated that "organic brain syndrome" is not an acceptable term for the condition being described, but all agreed on the symptoms and manifestations.
[2] A third child was playing with Winston and Austin, and was also third-partied by defendants. However, that child's parents were never served, and the third-party action against them was severed from the instant suit.