576 So.2d 490 (1991)
Alvin WILSON
v.
STATE of Louisiana, Through the DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS.
consolidated with
Ed HILLIARD, Jr.
v.
STATE of Louisiana, Through the DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS.
No. 90-C-1679.
Supreme Court of Louisiana.
March 11, 1991.
*492 Charles E. Griffin, II, St. Francisville, Albert F. Richard, Plaquemine, for Alvin and Ed Hilliard plaintiffs-applicants.
William J. Guste, Jr., New Orleans, Houston T. Penn, Asst. Atty. Gen., Joseph E. Kopsa, Baton Rouge, for State of La. Dept. of Public Safety defendant-respondent.
COLE, Justice.
We determine whether the State of Louisiana, through the Department of Public Safety and Corrections, as a custodian of prisoners, is liable for criminal acts perpetrated on the plaintiffs by an escaped convict where the incidents in question took place thirteen days after the convict left the grounds of the prison. The trial court, having conducted a bench trial, held the State liable to the victims. The Court of Appeal, First Circuit, reversed the trial court's holding of liability. We conclude the court of appeal correctly set forth the applicable law but erroneously applied the law to the facts of the case. Hence, we reverse the holding of the court of appeal on the issue of the State's liability. The court of appeal did not address the issue of damages. However, we find no abuse of discretion in the awards and, in the interest of judicial economy, we reinstate the judgments of the trial court as regards both liability and quantum.

I.
Plaintiffs Alvin Wilson and Ed Hilliard, Jr. brought this negligence action against the State of Louisiana through the Department of Public Safety and Corrections seeking compensation for both personal injuries and theft of their property. Plaintiffs were the victims of a robbery committed by an escaped convict, Robert Downs, who had been confined to the Louisiana State Penitentiary, Angola, Louisiana, for a term of 198 years for armed robbery.
Downs and two other convicts escaped from Angola on the evening of August 23, 1986. They had removed a cinder block from a wall constructed underneath an elevated gym, made their way to the perimeter fence, and cut through the fence directly below an unmanned guard tower. Their escape was detected within the hour, and prison officials immediately initiated a search. The search team used dogs, placed guards at key locations, and patrolled the area. Subsequently, the search personnel were deployed to different locations in Mississippi as the officials began receiving leads on the whereabouts of the escaped convicts. The search, although lessened in intensity, was not formally called off until the occurrence of the incidents involved in this action.
On the evening of September 5, 1986, plaintiffs were confronted by Downs as they returned home to a trailer located several miles from the prison grounds. While holding plaintiffs at gunpoint, Downs ordered them to give him the keys to Wilson's truck, led them inside the trailer, and tied them up with wire hangers. He stole clothing, money, food, weapons, and the truck. After the plaintiffs were discovered by a neighbor, they identified Downs at the local sheriff's office as the one who had assaulted and robbed them.
Contending the state was negligent in allowing Downs to escape from its custody, plaintiffs filed suit seeking damages for both the personal injuries they had suffered and the theft of their property. The trial court found the State at fault, awarding damages of $17,500 to Wilson and $15,000 to Hilliard. The court found the criminal acts were perpetrated during the course of an ongoing escape and were committed to obtain money and transportation to effectuate the escape.
The court of appeal reversed and rendered judgment for the defendant. Wilson v. Dept. of Public Safety & Corr., 563 So.2d 1251 (La.App. 1st Cir.1990). It held the trial court erred in finding the injuries sustained by the plaintiffs were within the scope of the duty owed by the state. Specifically, it held the district court erred in finding the criminal acts committed by Downs, thirteen days after his escape, *493 were "an integral part of the process of escaping." Id. at 1253. Further, the court concluded:
As a matter of policy, the state's liability should not extend to acts of violence committed by escaped convicts thirteen days after the escape from confinement. Consequently, we hold that, in this case, the risk that an escaped convict would harm these plaintiffs thirteen days after the escape is simply too remote to fall within the scope of the custodian's duty to prevent inmates from escaping.
Wilson, supra, at 1254 (citation omitted).

II.
We have not previously set forth the test to be applied when the victim of a crime committed by an escapee sues prison authorities for the damage inflicted. As a general proposition,
[t]he determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). The first element is usually a judge question, and the other four are usually jury questions unless reasonable minds could not differ.
Fowler v. Roberts, 556 So.2d 1, 4-5 (La. 1989) (citation omitted). More specifically, the courts of appeal in this state have fashioned a test from principles implicit in our opinion in Frank v. Pitre, 353 So.2d 1293 (La.1978). The test, reiterated by the court of appeal in this case, is one we believe enables courts to arrive at practical, common-sense results while balancing the interests of the State, as custodian, and innocent plaintiffs injured as a result of the State's negligent conduct.
Custodians of prisoners have a duty to manage the affairs of the prison so as not to create an unreasonable risk of harm to the public. This duty does not encompass all harm inflicted by escapees. Although prison authorities have a duty to prevent inmates from escaping, that duty is intended to protect persons from being harmed by escaping inmates while they are in the process of escaping. The duty is not intended to protect persons from harm inflicted by inmates who have already escaped and who subsequently commit tortious acts in the furtherance of their own pursuits. The state is not the insurer of the safety of its citizens. To recover against a custodian, a plaintiff must prove that the custodian was negligent in the management of the prison, that this negligence facilitated the escape, that the actions of the escapee caused the harm complained of, and that the risk of harm encountered by the particular plaintiff falls within the scope of the duty owed by the custodian. Wilson, 563 So.2d at 1253 (citing Sanchez v. State, Department of Health & Human Resources, 506 So.2d 777 (La.App. 1st Cir.1987)); LeBlanc v. State, Through Dept. of Corrections, 393 So.2d 125 (La.App. 1st Cir.), writ denied, 394 So.2d 1235 (La.1980); and, Reid v. State, Department of Corrections, 376 So.2d 977 (La.App. 1st Cir.1979), writ denied, 380 So.2d 71 (La.1980). See also, Edwards v. State, 556 So.2d 644, 649 (La. App. 2d Cir.1990).
In resolving the scope of the duty issue, improper emphasis has occasionally been placed on foreseeability or on the proximity of time and distance between the escape and the escapee's offense that caused the injury to his victim. The proper question is whether the offense occurred during, or as an integral part of, the process of escaping. Edwards, supra, at 649; LeBlanc, supra, at 128.[1]
*494 The court of appeal, while acknowledging the proper legal precepts, held, nonetheless, that the trial court erred in finding the criminal acts committed by Downs thirteen days after his escape were an integral part of the process of escaping. It determined that "[a]s a matter of policy, the state's liability should not extend to acts of violence committed by escaped convicts thirteen days after the escape from confinement." Wilson, 563 So.2d at 1254 (citation omitted). The court concluded the risk that an escaped convict would harm Wilson and Hilliard thirteen days after the escape is "simply too remote to fall within the scope of the custodian's duty to prevent inmates from escaping." Id.
We disagree with the conclusion reached by the court of appeal. The record fully supports the trial court's finding that Downs was dangerous and would be seeking food, clothing, weapons, and transportation to make his way out of Louisiana. Although there is some dispute as to whether it is eight or fifteen miles from the penitentiary, Hilliard's residence is within the normal area of containment set up by prison personnel in the event of a prison break (i.e., the search perimeter). At the time of the incident, the search for Downs and the other two inmates had not been formally abandoned, tending to indicate the defendant's suspicion Downs remained within the search perimeter. Under these circumstances, we have no difficulty concluding the theft of Wilson's truck was a necessary and integral component of the escape process. The truck enabled Downs to pass the search zone established by the authorities and greatly facilitated his successful flight from the state. The stolen food, clothing and money further aided in the process of the escape.
We emphasize the primary focus of the inquiry is on the question of whether the acts giving rise to the suit occurred during, or as an integral part of, the process of escaping. The operative word is "process," since there is no bright-line point of delineation which will satisfactorily assist a court in making the appropriate duty-risk analysis.[2] To focus exclusively on the time expiring after the inmate's exit from the prison grounds to the point where he victimizes a plaintiff leads to arbitrary cut-off points which serve neither the interests of plaintiffs nor those of the State. The same may be said of the distance involved. If an act committed one hour and one mile from the point of departure is compensable and one committed one month and one hundred miles from the same point is not, we are left without means to draw the line except in some arbitrary fashion unsatisfactory to all concerned. This is not to say considering these factors is impermissible. Rather, they are but two factors among many, which will vary with the circumstances of each case, that should be considered in determining whether the acts for which the plaintiff seeks compensation were committed during, or as an integral part of, the process of escaping.

III.
Because the court of appeal found no liability on the part of the State, it did not address the issue of damages raised by both plaintiffs and defendant. Similarly, the court of appeal did not address the issue of whether plaintiffs proved the prison custodian was negligent because it found the trial court erred in finding the injuries were within the scope of the duty owed by the State. Wilson, 563 So.2d at 1253. The court explicitly recognized that *495 the defendant has a duty to manage the affairs of the prison so as not to create an unreasonable risk of harm to the public. Id. The court implicitly recognized the duty was breached by the State in allowing the three convicts to escape. In any event, the court did not disturb the trial court's finding that the duty was breached. Although the issue was not fully briefed or argued before us, we find no manifest error, see Rosell v. Esco, 549 So.2d 840, 844 (La.1989), in the trial court's conclusion that allowing inmates at a maximum security institution to remain unsupervised for a time sufficient to remove a cinder block from a wall, to crawl through the hole thus made, to cut through the wire fence at the perimeter of the same facility beneath an unmanned guard tower, and to remain at large without warning to those in plaintiffs' position, all constitute a breach of the State's duty. We will therefore not disturb the trial court's finding of negligence. And, as previously noted, we find no abuse of discretion in the monetary awards made to the respective plaintiffs.
Accordingly, we reverse the judgment of the court of appeal as to the State's liability and reinstate the judgments of the trial court as regards both liability and quantum.
REVERSED: TRIAL COURT JUDGMENTS REINSTATED.
LEMMON, J., concurs.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
Assuming that the state was negligent, I do not believe that the injuries sustained by the plaintiffs were within the scope of the duty owed by the state. The risk that an escaped convict would harm these plaintiffs thirteen days after the escape and eight or fifteen miles from the penitentiary is too remote to fall within the scope of the custodian's duty to prevent inmates from escaping. Accordingly, I respectfully dissent.
NOTES
[1] Stated another way, the proper inquiry is how easily the risk of injury is associated with the duty that is sought to be enforced. Edwards, supra, at 649.
[2] We reject categorically the State's contention that the concept of escape in negligence actions should be linked to the definition of simple escape found in La.Rev.Stat. § 14:110(A)(1) (West 1986). That statute provides

[s]imple escape shall mean ... [t]he intentional departure ... of a person imprisoned, committed, or detained from a place where such person is legally confined, from a designated area of a place where such person is legally confined, or from the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections.
This restrictive definition of the process of escape, i.e., the escape is complete as soon as the escapee leaves the grounds of the prison, is not feasible. It would limit compensation to those injured by the inmate while he remained on the prison grounds, presumably guards and other inmates. No court has hinted the class of persons who may recover is to be so limited.