|, JOAN BERNARD ARMSTRONG, Chief Judge.
In this personal injury case, Patricia Kappes Panter, a New Orleans Police Department (NOPD) officer, sued Orleans Parish Criminal Sheriff Charles C. Foti, Jr., and three sheriffs deputies, John Net-to, Henry Magee and Christian Lang, for damages sustained when she was attacked by prisoner and co-defendant Derek Pickering while Mr. Pickering was in the sheriffs custody.[1]
The trial court issued detailed reasons for judgment, including findings of fact based upon the testimonial and objective evidence offered at the trial through live testimony, deposition testimony and exhibits. We have reviewed the record in its entirety and find that it supports the following findings of fact.
Mr. Pickering was arrested by NOPD officer Alita Richardson on charges of criminal damage and battery on a hotel security guard. Officer Panter was called to the scene of the crime to transport Mr. Pickering to jail. Officer Panter testified at trial that the arrestee was calm and cooperative from her arrival on the scene until they arrived at the criminal sheriffs office for his booking. Upon arrival at |2the office, Officer Richardson uncuffed Mr. Pickering. Both Officer Panter and Officer Richardson testified that Mr. Pickering continued to be calm and cooperative once inside the sheriffs Intake and Processing Center (IPC), and he followed all instructions throughout the un-cuffing and search process.
The trial court concluded that Officer Panter at no time told the sheriffs deputies to put Mr. Pickering in a holding cell or to keep him in handcuffs. Indeed, while Mr. Pickering was going through the standard search procedures, both Officers Pan-ter and Richardson stood casually within feet of Mr. Pickering and neither of them anticipated that he would assault anyone.
Officer Panter was having a casual conversation with Deputy Magee, whom she had known for more than twenty years on the job, when Mr. Pickering assaulted her, striking her face. The trial court found that although Officer Panter argues that she told the deputies that Mr. Pickering was violent and needed to be placed in a cell, she did not identify anyone to whom she gave this advice, either by name or general description. Deputy Magee denied that Officer Panter told him or anyone else that Mr. Pickering needed to be restrained, and that had she done so, he would have placed Mr. Pickering in a holding cell in accordance with sheriffs office policy.
The trial court noted that every witness that testified for Officer Panter, including *1201 Officer Panter herself, said that Mr. Pickering’s assault on Officer Panter was without notice, unexpected and a complete surprise. Neither Officer Panter nor Officer Richardson expected him to assault anyone during the intake process. |3The trial court held this to be consistent with the plaintiffs actions and those of the NOPD officers who came to IPC with Officer Panter. None of these officers told any of the deputies that Mr. Pickering needed to be kept in handcuffs or in a holding cell; none of them kept a constant watch on Mr. Pickering during the search procedure; and none of them told any of the deputies that Mr. Pickering was likely to be violent because none of them thought he was likely to assault anyone. The trial court specifically found that despite Officer Panter’s claim that she told unidentified deputies that Mr. Pickering was violent and needed to be kept in handcuffs, her actions and those of her NOPD comrades present at IPC are not consistent with that claim.
The trial court rejected Officer Richardson’s testimony as to Mr. Pickering’s actions once Officer Panter arrived at the hotel as well as her testimony as to what she allegedly told deputies at IPC as “not credible and unpersuasive.” The court noted that her testimony at trial was inconsistent not only with her deposition testimony and Officer Panter’s testimony, but also with her own actions. In deposition, Officer Richardson testified that she removed her handcuffs from Mr. Pickering, while at trial she claimed that she and some unnamed deputies did so. In deposition testimony, Officer Richardson asserted that Mr. Pickering was violent on the way to Officer Panter’s police car, and was kicking and thrashing once placed in the car. Officer Panter, to the contrary, testified that Mr. Pickering was calm and cooperative on the way to her car and once in the police vehicle. 14The trial court found that these inconsistencies compelled a finding that Officer Panter failed to prove notice or existence of a duty that was breached.
The trial court also rejected a letter offered in connection with the testimony of Officer Brian Frere. Officer Frere testified that Officer Panter gave him a letter taken from Mr. Pickering that “in essence said the arrestee had a psychological history that made him dangerous.” The implication suggested by Officer Panter is that she gave this note to sheriffs office personnel who by reason' of this information should have known Mr. Pickering was violent, creating a duty to restrain him. However, the trial court found specifically that Officer Frere’s testimony was unpersuasive since neither Officer Panter nor any other witness who dealt with Mr. Pickering testified about the note, and there was no evidence presented at trial that Officer Panter gave the note to any deputy at IPC.
The trial court concluded that Officer Panter’s injuries were caused by her own negligence in the following respects: she failed to warn the deputies that Mr. Pickering would be violent; she failed to maintain reasonable vigilance while Officer Richardson uncuffed Mr. Pickering; and ' she failed to maintain reasonable vigilance while standing within feet of Mr. Pickering while he was going through the search procedure. The trial court found that Officer Panter did not meet her burden under Louisiana’s duty-risk analysis of proving causation, that is, that she would not have sustained her injuries but for some action or inaction by the sheriff and his deputies.
| ¡¡Officer Panter assigns only one error, that the trial court erroneously applied applicable law, requiring a de novo review of the evidence. She does not contend that the trial court’s factual findings were manifestly erroneous, and our independent review of the record taken as a *1202 whole convinces us that the record supports those findings.
In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Hill v. Morehouse Parish Police Jury, 95-1100 p. 4 (La.1/16/96), 666 So.2d 612, 614. However, where trial court legal errors have tainted the fact finding process, the verdict below is not reviewed under the manifest error standard and, if the record is complete, the appellate court may make a de novo review of the record and determine the preponderance of the evidence. Rosell v. ESCO, 549 So.2d 840, 844 fn. 2 (La.1989); Gonzales v. Xerox Corp., 320 So.2d 163 (La.1976).
Officer Panter rests her assignment of legal error on testimony rejected by the trial court: that Officer Richardson told Officer Panter that Mr. Pickering was violent; that Officer Panter informed the IPC personnel that Mr. Pickering was violent, that his handcuffs should not be removed and that he needed to be watched because of his combativeness; and that Officer Richardson informed the IPC intake deputies that Mr. Pickering was violent and needed to be handcuffed and placed into a holding cell.
Officer Panter contends that as a matter of law, the sheriff and deputy Magee violated their duties to manage the affairs of the prison so as not to create an unreasonable risk of harm to police officers who are required to uncuff their | ¿prisoners in accordance with sheriffs office policy and to remain in an open room with the arrested prisoners without the benefit of protective barriers or cells.
The Louisiana Supreme Court considered custodial liability for damages caused by an escaped prisoner in Wilson v. Dept. of Public Safety & Corr., 576 So.2d 490 (La.1991). Applying the duty-risk standard for negligence, the court noted that plaintiff is required to prove that the defendant had a duty to conform his conduct to a specific standard (duty); that the defendant’s conduct failed to conform to the appropriate standard (breach); that the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (cause-in-fact); that the substandard conduct was also a legal cause of the plaintiffs injuries (scope of liability or scope of protection); and that plaintiff suffered actual damages (damages). Wilson, 576 So.2d at 493.
In Wilson, three prisoners convicted of armed robbery escaped from the Louisiana State Penitentiary at Angola, Louisiana, and robbed the plaintiffs. To recover against a custodian, a plaintiff must prove that the custodian was negligent in the management of the prison, that this negligence facilitated the escape, that the actions of the escapee caused the harm complained of, and that the risk of harm encountered by the particular plaintiff falls within the scope of the duty owed by the custodian. The issue was whether the plaintiffs’ robberies occurred during, or as an integral part of the process of escaping, thus coming within the scope of the defendant’s duty. The court allowed recovery of damages sustained thirteen days after the escape and from 8 to 15 miles from the penitentiary. The court reinstated the trial court’s finding that one of the escapees was dangerous and would be |7seeking food, clothing, weapons and transportation to flee. The residence where a robbery occurred was within the normal area of containment set up by prison personnel in the event of an escape, and, at the time of the incident, the State had not abandoned its search for the inmates. The court concluded that the theft of plaintiff Wilson’s truck was an integral part of the escape process and the stolen food, clothing and money further aided in the process of escape. Applying the negligence test, the' court found liability and assessed damages, holding *1203 that the defendant had a duty to manage the affairs of the prison so as not to create an unreasonable risk of harm to the public.
In Wilson, the plaintiffs were unsuspecting members of the public at large who were robbed by escaped convicts. The plaintiffs, unlike Officer Panter, were not in a position to know of the existence of the threat posed by the convicts, nor were they possessed of information that they could have communicated to prison personnel to prevent the escapes, robberies and subsequent damages. For these reasons, the Wilson case does not support Officer Panter’s contention that the trial court committed an error of law in rendering judgment in favor of the defendants in the instant case. The trial court correctly applied the law regarding the duty of the custodian to prevent an escape as set forth in Wilson. However, based upon the un-controverted credibility findings made by the trial court, neither Officer Panter nor Officer Richardson communicated their alleged fears concerning Mr. Pickering’s potential for violent behavior to the custodial personnel at IPC.
| ^Officer Panter argues that strict liability under La.C.C. arts. 2317 and 2322 should apply to this factual situation, citing Engles v. City of New Orleans, 2003-0692 (La.App. 4 Cir. 2/25/04), 872 So.2d 1166. In that case, involving a claim for damages sustained by a bicyclist who fell on a defective street, we held that in a claim against a public entity based on negligence or strict liability, a plaintiff has the burden of proving, inter alia, that the public entity had notice of the defect under La.R.S. 9:2800, but failed to take corrective action within a reasonable time, citing Jones v. City of New Orleans, 2002-1996 (La.App. 4 Cir. 3/5/03), 842 So.2d 420. In this case, based on the trial court’s credibility findings, which are supported by the record in its entirety, there is no evidence that the sheriff or his deputies had notice of Mr. Pickering’s propensity to strike Officer Panter.
Officer Panter cites Faulkner v. The McCarty Corp., 2002-1337 (La.App. 4 Cir. 6/11/03), 853 So.2d 24 for the proposition that the sheriff and deputy Magee are liable under the theory of custodial liability because they had custody, care or garde of the open room in which the assault occurred. The plaintiff claims that the lack of protective barriers between Mr. Pickering and Officer Panter presented an unreasonable risk of harm resulting in the plaintiffs injuries. Faulkner was an asbestos suit filed by a longshoreman for exposure from 1951 to 1989. After having rejected the plaintiffs’ negligence claim and claim under the lessor/lessee relationship provided for in La.R.S. 9:3221 for lack of a duty owed by the defendant Dock Board to the plaintiffs, the court considered plaintiffs’ strict liability claim. We held that plaintiffs failed to sustain their burden of showing |athat the defendant either owned or had care, custody, or garde, and that under the circumstances the condition presented an unreasonable risk of harm that resulted in the plaintiffs’ damages. We noted that a building owner is answerable for vices of construction only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such care. Because of the trial court’s reasonable finding of lack of notice on the part of the sheriff and his deputies, Faulkner does not support a reversal of the judgment below. The lack of partitioned areas for use by law enforcement personnel is irrelevant in this situation since the sheriffs office had no reason to believe that Mr. Pickering presented a flight or assault risk. It is clear that had the transporting or arresting officers warned the IPC personnel of Mr. Picker *1204 ing’s alleged dangerous proclivities, he would have remained handcuffed and/or been placed in an available holding cell.
Officer Panter claims that the defendants owed her a duty of protection against escaping prisoners. However, this claim is based on the discredited testimony of Officers Panter and Richardson that they advised IPC deputies of Mr. Pickering’s violent behavior and on the testimony concerning the alleged note referring to Mr. Pickering’s mental condition. The trial court also rejected that testimony.
For the foregoing reasons, we find that the trial court properly applied the relevant law relating to the plaintiffs negligence and strict liability claims. We [infind that the trial court’s credibility determinations were reasonable and that the findings of fact outlined in the court’s reasons for judgment are not manifestly erroneous or clearly wrong.
AFFIRMED.

. The Panter case, 2004-CA-0696, was consolidated in the trial court with Scheurmann v. Foti, 2004-CA-0694 and Hansche v. Foti, 2004-CA-0695. The Scheurmann case was settled shortly after trial and is not before this Court. The trial court by judgment of November 21, 2003, dismissed Hansche's claims, and that plaintiff has not appealed that judgment. Therefore, the only case now before this Court on appeal is the Panter case, 2004-CA-0696.