STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1430 consolidated with 11-1431

NELWIN RIDER

VERSUS

JACK STANSBERRY, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2008-10950 C/W 2009-10096
HONORABLE JULES D. EDWARDS, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and J. David Painter, Judges.

REVERSED AND REMANDED.

Homer E. Barousse, Jr.
John Franklin Craton
Barousse & Craton, L.L.C.
P. O. Box 1305
Crowley, LA 70527-1305
(337) 785-1000
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Acadia Parish Sheriff's Deptartment
    Wayne Melancon, Acadia Parish Sheriff
    Frank Privat, Acadia Parish Sheriff Deputy
    Eby Henry, Former Warden, Acadia Parish Justice Center
    Princeton Excess and Surplus Lines Ins. Company

**John Franklin Weeks, II**
**T. Allen Usry**
**Ursy, Weeks & Matthews**
**1615 Poydras St., Suite 1250**
**New Orleans, LA 70112**
**(504) 592-4600**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **Acadia Parish Sheriff's Deptartment**
 **Wayne Melancon, Acadia Parish Sheriff**
 **Frank Privat, Acadia Parish Sheriff Deputy**
 **Eby Henry, Former Warden, Acadia Parish Justice Center**
 **Princeton Excess and Surplus Lines Ins. Co.**

**J. Wendel Fusilier**
**Jacob B. Fusilier**
**J. Wendel Fusilier, APLC**
**P. O. Box 528**
**Ville Platte, LA 70586**
**(337) 363-6661**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **Nelwin Rider**

**PETERS, J.**

This litigation stems from the September 20, 2007 escape of Jack Stansberry, a prisoner in the custody of the Acadia Parish Sheriff's Department. Four days later, the plaintiff, Nelwin Rider, sustained physical injuries when the escapee hijacked a vehicle in Ville Platte, Louisiana, and, when fleeing the scene, struck her with the vehicle. Ms. Rider brought this action to recover for her damages and named Stansberry as a defendant, along with Wayne Melancon, Sheriff of Acadia Parish; the Acadia Parish Sheriff's Department; Acadia Parish Deputy Frank Privat; and the Sheriff's liability insurer, identified in the petition as XYZ Insurance Company[1] (we collectively refer to all of the defendants except Stansberry as "the law enforcement defendants"). The matter is now before us because the trial court granted a partial summary judgment in favor of Ms. Rider, finding that the law enforcement defendants were one hundred percent at fault in causing her injuries. For the following reasons, we reverse the trial court judgment and remand this matter to the trial court for further proceedings.

## DISCUSSION OF THE RECORD

There is little dispute concerning what occurred between the time of Stansberry's escape and the incident wherein Ms. Rider sustained her injuries. On September 20, 2007, at 7:05 p.m., Stansberry was in the custody of the Acadia Parish Sheriff's Department and was being transported by ambulance from the Acadia Parish Justice Center to the American Legion Hospital in Crowley. Warden Eby Henry followed the ambulance to the hospital and turned Stansberry's custody over to Deputy Frank Privat after arriving at the hospital. Stansberry had been transported without being handcuffed or otherwise restrained, and he remained unrestrained during the entire time at the hospital. After the hospital

---

[1]Ms. Rider later amended her suit to name Princeton Excess and Surplus Lines Insurance Company and former Warden Eby Henry as party defendants.

emergency room staff released Stansberry to Deputy Privat, the deputy contacted the Sheriff's office requesting transportation back to the Justice Center. While the deputy and Stansberry waited for the arrival of transportation, Stansberry asked to use the restroom. After he exited the restroom, Deputy Privat instructed him to wait while he also used the restroom facilities. While Deputy Privat was occupied in the restroom, Stansberry walked out of the hospital.

Stansberry made his escape from Crowley by going to a close by restaurant, stealing a vehicle from the restaurant parking lot, and driving to Lake Charles, Louisiana. Four days later, on September 24, 2007, he left Lake Charles in the stolen vehicle intending to travel to Opelousas, Louisiana. Instead, the vehicle overheated, and Stansberry obtained a ride from a passing motorist to Ville Platte, Louisiana. After he arrived in Ville Platte, he stole a second vehicle from the parking area near the Ville Platte Medical Center walking track. The owner of the vehicle, Georgianna Fontenot, and Ms. Rider were just leaving the walking track when Stansberry approached them and forced Ms. Fontenot to provide him with the keys to her vehicle. Ms. Rider sustained her injuries when she was struck as Stansberry backed the vehicle out of the parking space.

In this newest stolen vehicle, Stansberry returned to Lake Charles. Four days later, on September 28, 2007, the Calcasieu Parish Sherriff's Office apprehended him in Lake Charles.

Ms. Rider instituted a personal injury suit in Evangeline Parish on July 21, 2008, and later, on September 28, 2008, instituted the same suit in Acadia Parish. The Evangeline Parish suit was met with an exception of improper venue and ultimately, on January 27, 2009, was transferred to Acadia Parish as well. These two suits were consolidated for trial purposes.

2

Among other defenses asserted, the law enforcement defendants asserted that they had no liability because Stansberry had completed his escape by the time Ms. Rider sustained her injuries. They then filed a motion for summary judgment on that argument. Ms. Rider responded by filing a motion for partial summary judgment addressing the issue of liability only and asserting that she was entitled to judgment finding the law enforcement defendants solely at fault in causing her injuries. The trial court agreed with Ms. Rider's argument and, after a hearing on the motions for summary judgment, rejected the law enforcement defendants' motion and granted Ms. Rider's motion. That grant of partial summary judgment to Ms. Rider is the basis of the appeal now before us.

The law enforcement defendants raise three assignments of error on appeal:

1.

The trial judgment committed reversible error in determining that the summary judgment record and evidence (particularly Stansberry's sworn statement) established *prima facia* evidence that Stansberry was still in the process of escape at the time he injured Appellee and thus entitled her to partial summary judgment as to Appellants' liability.

2.

In finding simply that Appellants were "liable" to Appellee in the three judgments he signed, the trial judge committed two distinct errors. First, he failed to separately assess the appropriate percentage of fault to Warden Henry and to Deputy Privat – the only two actual tortfeasors in this case affiliated with the Sheriff's Office.

3.

Additionally, to the extent these Judgments can be interpreted as the trial judge's final determination of all fault that contributed to Appellee's injuries, the trial judge committed reversible error by failing to consider and allocate any portion of fault to Stansberry. His intentional and egregious fault is readily obvious and undeniable from the summary judgment record and justifies allocating a majority of the fault to him.

# OPINION

In reversing the trial court grant of summary judgment, we need only address the law enforcement defendants' first assignment of error. Additionally, in doing so, we do not conclude that Stansberry was no longer in the process of escaping at the time Ms. Rider sustained her injuries but that there are genuine issues of material fact as to this assertion.

Summary judgment is a procedural device used to avoid a trial on the merits when no genuine issue of material fact exists in a matter. *Kay v. Carter*, 243 La. 1095, 150 So.2d 27 (1963). Its procedure is "designed to secure the just, speedy, and inexpensive determination of every action," except in certain domestic actions; the "procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2); *Racine v. Moon's Towing*, 01-2837 (La. 5/14/02), 817 So.2d 21. Appellate courts review summary judgment *de novo*, applying the same standard as that used by the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. The burden of proof rests with the movant. La.Code Civ.P. art. 966(C)(2). Judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

> A "genuine issue" is a "triable issue." *Toups v. Hawkins*, 518 So.2d 1077, 1079 (La.App. 5th Cir.1987) (citing *Brown [v. B & G Crane Service, Inc.*, 172 So.2d 708, 710 (La.App. 4 Cir.1965)]). More precisely, "[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes." W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 481 (1983). **In determining whether an issue is "genuine," courts**

**cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.** *Simon v. Fasig-Tipton Co. of New York*, 524 So.2d 788, 791 (La.App. 3d Cir.), *writs denied*, 525 So.2d 1048, 1049 (La.1988); *Pace v. Zilka*, 484 So.2d 771 (La.App. 1st Cir.), *writ denied*, 488 So.2d 691 (La.1986); *Mecom v. Mobil Oil Corp.*, 299 So.2d 380, 386 (La.App. 3d Cir.), *writ denied*, 302 So.2d 308 (La.1974). "Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact." *Brown*, 172 So.2d at 710; *Sally Beauty Co. v. Barney*, 442 So.2d 820, 822 (La.App. 4th Cir.1983).

A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Penalber v. Blount*, 550 So.2d 577, 583 (La.1989). "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *South Louisiana Bank v. Williams*, 591 So.2d 375, 377 (La.App. 3d Cir.1991), *writs denied*, 596 So.2d 211 (La.1992). Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. *Sassone v. Elder*, 626 So.2d 345, 352 (La.1993); *Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co.*, 427 So.2d 1152, 1153-54 (La.1983) (collecting cases); *McCoy v. Physicians & Surgeons Hospital, Inc.*, 452 So.2d 308, 310 (La.App. 2d Cir.),*writ denied*, 457 So.2d 1194 (La.1984) (noting that "[s]ummary judgment may not be used as a substitute for trial").

*Smith*, 639 So.2d at 751 (emphasis added) (alteration in original).

Ms. Rider's motion for partial summary judgment is based on a sworn statement taken from Stansberry and the record of these proceedings. The record itself contains statements, deposition testimony, and other exhibits.

In *Wilson v. State Through Department of Public Safety and Corrections*, 576 So.2d 490, 493 (La.1991) (footnote omitted) (alteration in original), the supreme court supplied the test applying in situations where a victim, injured by an escaped prisoner, sues the authorities responsible for that prisoner being at large:

As a general proposition,

> [t]he determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2)

proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). The first element is usually a judge question, and the other four are usually jury questions unless reasonable minds could not differ.

*Fowler v. Roberts*, 556 So.2d 1, 4-5 (La.1989) (citation omitted). More specifically, the courts of appeal in this state have fashioned a test from principles implicit in our opinion in *Frank v. Pitre*, 353 So.2d 1293 (La.1978). The test, reiterated by the court of appeal in this case, is one we believe enables courts to arrive at practical, common-sense results while balancing the interests of the State, as custodian, and innocent plaintiffs injured as a result of the State's negligent conduct.

Custodians of prisoners have a duty to manage the affairs of the prison so as not to create an unreasonable risk of harm to the public. This duty does not encompass all harm inflicted by escapees. Although prison authorities have a duty to prevent inmates from escaping, that duty is intended to protect persons from being harmed by escaping inmates while they are in the process of escaping. The duty is not intended to protect persons from harm inflicted by inmates who have already escaped and who subsequently commit tortious acts in the furtherance of their own pursuits. The state is not the insurer of the safety of its citizens. To recover against a custodian, a plaintiff must prove that the custodian was negligent in the management of the prison, that this negligence facilitated the escape, that the actions of the escapee caused the harm complained of, and that the risk of harm encountered by the particular plaintiff falls within the scope of the duty owed by the custodian. *Wilson*, 563 So.2d at 1253 (citing *Sanchez v. State, Department of Health & Human Resources*, 506 So.2d 777 (La.App. 1st Cir.1987)); *LeBlanc v. State, Through Dept. of Corrections*, 393 So.2d 125 (La.App. 1st Cir.), *writ denied*, 394 So.2d 1235 (La.1980); and, *Reid v. State, Department of Corrections*, 376 So.2d 977 (La.App. 1st Cir.1979), *writ denied*, 380 So.2d 71 (La.1980). *See also, Edwards v. State*, 556 So.2d 644, 649 (La.App. 2d Cir.1990).

In resolving the scope of the duty issue, improper emphasis has occasionally been placed on foreseeability or on the proximity of time and distance between the escape and the escapee's offense that caused the injury to his victim. The proper question is whether the offense occurred during, or as an integral part of, the process of escaping. *Edwards, supra*, at 649; *LeBlanc, supra*, at 128.

In *Wilson*, the supreme court reversed the appellate court, finding that the crimes, committed by the escapees thirteen days after their escape from the Louisiana State Penitentiary at Angola, were a necessary and integral component of their escape:

> The record fully supports the trial court's finding that Downs was dangerous and would be seeking food, clothing, weapons, and transportation to make his way out of Louisiana. Although there is some dispute as to whether it is eight of fifteen miles from the penitentiary, [the plaintiff's] residence is within the normal area of containment set up by prison personnel in the event of a prison break (i.e., the search perimeter). At the time of the incident, the search for Downs and the other two inmates has not been formally abandoned, tending to indicate the defendant's suspicion Downs remained within the search perimeter. Under these circumstances, we have no difficulty concluding the theft of [the plaintiff's] truck was a necessary and integral component of the escape process. The truck enabled Downs to pass the search zone established by the authorities and greatly facilitated his successful flight from the state. The stolen food, clothing and money further aided in the process of the escape.

*Id.* at 494 (alteration ours).

However, the supreme court took great pains to stress that these types of cases should be decided on a case-by-case basis:

> We emphasize the primary focus of the inquiry is on the question of whether the acts giving rise to the suit occurred during, or as an integral part of, the process of escaping. The operative word is "process," since there is no bright-line point of delineation which will satisfactorily assist a court in making the appropriate duty-risk analysis. To focus exclusively on the time expiring after the inmate's exit from the prison grounds to the point where he victimizes a plaintiff leads to arbitrary cut-off points which serve neither the interests of plaintiffs nor those of the State. The same may be said of the distance involved. If an act committed one hour and one mile from the point of departure is compensable and one committed one month and one hundred miles from the same point is not, we are left without means to draw the line except in some arbitrary fashion unsatisfactory to all concerned. This is not to say considering these factors is impermissible. Rather, **they are but two factors among many, which will vary with the circumstances of each case, that should be considered in determining whether the acts for which the plaintiff seeks compensation were committed during, or as an integral part of, the process of escaping**.

*Id.* (emphasis added).

In his sworn statement,[2] Stansberry basically asserted the facts previously stated with regard to his initial escape. He did state that after staying in Lake Charles four days, he simply "decided to jump up and go anywhere." As such, he simply "took off riding." In other words, there was nothing in his statement to suggest that he felt a need to travel to Opelousas to continue his escape. According to Stansberry, the vehicle overheated when he reached Oakdale, Louisiana, and from there he hitchhiked into Ville Platte.

Once in Ville Platte, he walked to the Ville Platte Medical Center and sat on a bench located near the hospital's walking track. While sitting there, he noticed Ms. Rider and Ms. Fontenot walking around the track. In fact, according to Stansberry, the two women spoke to him as they passed him and told him goodbye as they left the track. Stansberry followed the two women and took Ms. Fontenot's keys, threating her by claiming he had a gun. Initially, Ms. Fontenot tried to throw the keys to Ms. Rider, but when they landed on the ground, he grabbed them, entered the vehicle, backed it up, and drove off. He stated that although he heard Ms. Rider yell as he backed up, he did not stop to check on any possible injuries to her. He then drove back to Lake Charles.

Deputy Privat's deposition testimony and his statement, both of which are a part of the record, basically supports Stansberry's statement with regard to the initial escape. While Deputy Privat instructed Stansberry to stop, the prisoner ignored the directive and fled the scene on foot. Deputy Privat pursued him but

---

[2]The sworn statement of Stansberry, who was an unrepresented named defendant in the litigation at the time, was taken by Ms. Rider's counsel at the Phelps Correctional Facility on September 1, 2010. No notice of intent to take the statement of a named defendant was provided to the other defendants, and the only party present during the statement was counsel for Ms. Rider.

could not keep up. Stansberry disappeared from his view, and a search by deputies, who arrived a short time later, failed to find him.

In his deposition testimony, Detective Dennis Fruge explained that he was the investigating officer in charge of catching the fugitive. According to Detective Fruge, after he received the file on this matter the day after the escape, he went through Stansberry's effects at the Justice Center looking for addresses or any leads he could find. He contacted all of Stansberry's family, friends, and former girlfriends that could be identified but to no avail. A few days later, a former girlfriend called to say that she had been contacted by Stansberry. Detective Fruge then used this information and the information he obtained by examining her telephone records to obtain a Lake Charles address and telephone number. This was ultimately the place where Stansberry was apprehended. Detective Fruge testified that a nationwide "All Points Bulletin" was released by the Sheriff's Department on September 21, 2007, and that he contacted the Lafayette Parish Sheriff's Office and the Lake Charles Police Department. Once Stansberry was apprehended, Detective Fruge closed his investigation. Stansberry was returned to the Acadia Parish Sheriff's Department on October 1, 2007.

There is no question but that a continuing effort was moving forward to apprehend Stansberry at the time of Ms. Rider's injuries, as would be the case in every escape, no matter how much time had passed since the escape. However, that fact alone does not establish that Stansberry was still in the process of escaping as contemplated in *Wilson*, 576 So.2d 490. As pointed out by the supreme court in that case, the issue to be decided is a fact-driven issue, and we find genuine issues of material fact that preclude the grant of a summary judgment on liability. Although Stansberry repeatedly stated, upon prompting from counsel

9

for Ms. Rider, that his actions at the time Ms. Rider was injured were part and parcel of his continuous and ongoing escape, which may or may not have ended in Florida if he had sufficient money, a question remains as to whether his escape was concluded when he initially arrived in Lake Charles. Based on his statement, a trier of fact could conclude that Stansberry's escape had already been accomplished and that the criminal acts complained of occurred while he was in the furtherance of his own pursuits. Accordingly, we reverse the trial court judgment granting a partial summary judgment in favor of Ms. Rider and remand the matter for further proceedings.

## DISPOSITION

The judgment of the trial court granting a partial summary judgment in favor of Nelwin Rider on the issue of liability is reversed, and the matter is remanded to the trial court for further proceedings. We assess all costs of this appeal to Nelwin Rider.

**REVERSED AND REMANDED.**