# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-537

**JOHN KITE, ET AL.**

**VERSUS**

**RAPIDES PARISH SHERIFF'S DEPARTMENT, ET AL.**

**CONSOLIDATED WITH**

## 24-538

**LEON BOYD, ET AL.**

**VERSUS**

**RAPIDES PARISH SHERIFF'S DEPARTMENT, ET AL.**

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NOS. 252,993 AND 253,035
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JONATHAN W. PERRY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Jonathan W. Perry, and Guy E. Bradberry, Judges.

**AFFIRMED.**

Jared Dunahoe
DUNAHOE LAW FIRM
402 Second Street
Natchitoches, Louisiana 71457
(318) 352-1999
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
   Ja'La Wanya Boyd, Ja'Marsha Deon Boyd, and Tauriez Kite


H. Bradford Calvit
Eli J. Meaux
PROVOSTY, SADLER, deLAUNAY, APC
4615 Parliament Dr., Suite 200
Alexandria, Louisiana 71315-3530
**COUNSEL FOR DEFENDANTS/APPELLEES:**
   William Earl Hilton and The Princeton Excess and Surplus Lines Insurance
   Company


Richard A. Rozanski
Richard A. Rozanski, APLC
2312 South MacArthur Drive
Alexandria, Louisiana 71301
(318) 445-5600
**COUNSEL FOR DEFENDANTS/APPELLEES:**
   The City of Alexandria, Earl Williams, Sr. and Henry Jacobs


Misty Shannon Antoon
Law Office of Misty Shannon Antoon, LLC
2312 South MacArthur Drive
Alexandria, Louisiana 71301
(318) 792-3514
**COUNSEL FOR DEFENDANTS/APPELLEES:**
   The City of Alexandria, Earl Williams, Sr. and Henry Jacobs

**PERRY, Judge.**

In this wrongful death and survival action involving a victim killed by an escaped prisoner, Plaintiffs appeal the dismissal of their action against Defendants, a former sheriff and his insurer, on a motion for summary judgment. We affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

McKennedy Armstead ("Armstead") was a Department of Correction ("DOC") inmate incarcerated in the Rapides Parish Detention Center III, serving a two-and-one-half-year sentence for Possession of a Controlled Dangerous Substance, Schedule II. On June 2, 2014, Armstead was acting as a trusty performing labor for the City of Alexandria ("the City") at the City's Utility Department ("the Utility Department"). On that day, Henry Jacobs ("Jacobs") and Earl Williams, Sr. ("Williams"), two Utility Department employees who had been commissioned by the Rapides Parish Sheriff ("Sheriff"), were supervising Armstead.

While working for the Utility Department, Armstead accessed the keys to a City truck and escaped. He drove the City vehicle near his mother's house in Alexandria, walked to his mother's home, retrieved a gun and convinced his cousin, Antonio Calhoun ("Calhoun"), to drive him to the home of his girlfriend Johnnie Kite ("Ms. Kite") in Grant Parish. Calhoun drove Armstead to Ms. Kite's house and remained in the vehicle while Armstead entered Ms. Kite's house. Once inside, Ms. Kite's three children exited the house and got into Calhoun's vehicle. After Calhoun drove away, Armstead shot and killed Ms. Kite and then committed suicide.

On May 28, 2015, John Kite ("Mr. Kite"), father of Ms. Kite, as Administrator of the Succession of Ms. Kite and on behalf of her minor children, Ja'La Wanya

Boyd ("Ja'La"), Ja'Marsha Deon Boyd ("Ja'Marsha"), and Tauriez Kite ("Tauriez"), filed suit against the Rapides Parish Sheriff's Department ("Sheriff's Department"), former Sheriff William Earl Hilton ("Sheriff"), the Utility Department and Mayor Jacques Roy, alleging the wrongful death of Ms. Kite. Mr. Kite alleged that Armstead was incarcerated in a work release program sponsored and supervised by the Sheriff's Department and additional supervision was provided by commissioned deputies employed by the Utility Department and the City.

On June 3, 2015, another Petition for Damages was filed by Leon Boyd ("Boyd") also on behalf of the minor children of Ms. Kite, Ja'La and Ja'Marsha, while Aline Craft ("Ms. Craft") filed suit on behalf of the minor child, Tauriez. Boyd alleged that he was the father, caretaker, and natural tutor of Ja'la and Ja'marsha, while Ms. Craft alleged that she was the aunt of Tauriez and had care, custody, and control of him. The petition filed by Boyd and Ms. Craft mirrored the claims raised in Mr. Kite's petition.

After the two lawsuits were consolidated, an amended and supplemental petition was filed by Mr. Kite. It named and substituted Leon Boyd as the natural tutor of the minor children Ja'La and Ja'Marsha. It also named and substituted Tauriez Shaw as the natural tutor of the minor child, Tauriez Kite. A second amending and supplemental petition was later filed, adding the following as Defendants: Jacobs, Williams, and Princeton Excess and Surplus Lines Insurance Company ("Princeton"), the alleged insurer of the Sheriff, Jacobs, and Williams. Later, a third amending and supplemental petition was filed, stating that Ja'la, Ja'Marsha, and Tauriez (collectively "Plaintiffs") were no longer minors and sought to be substituted as proper party plaintiffs.

In answer to the various petitions, the Sheriff denied fault, alleged the fault of Armstead and the City, invoked the protections of La.R.S. 9:2798.1 and La.R.S. 15:708, and further contended that Armstead was not in the process of escaping when Ms. Kite was killed. In their answers to the various petitions, the City, Williams, and Jacobs alleged that Armstead was not in the process of escaping when the shooting of Ms. Kite occurred, that Armstead was motivated by purely personal reasons, and that there was no independent duty to Ms. Kite, a Grant Parish resident, which encompassed the risk of harm.

After discovery was completed, the Sheriff and Princeton filed a Motion for Summary Judgment, asserting four arguments: first, the Sheriff complied with the legal requirements outlined in La.R.S. 15:708 to allow a trusty to work for the City; second, whether the Sheriff or a deputy should have put in place more or different policies or should not have allowed Armstead to be selected for the City work program were discretionary acts under the provisions of La.R.S. 9:2798.1; third, there is no proof or evidence that the Sheriff committed criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct; and fourth, Plaintiffs have no proof that the unfortunate death of Ms. Kite occurred while Armstead was in the process of escaping. Therefore, the Sheriff and Princeton asked that they be granted summary judgment.

In a separate filing, the City, Jacobs, Williams, the Sheriff, and Princeton filed a Joint Motion for Summary Judgment, asserting four arguments: first, Armstead was no longer in the process of escaping when he was at Ms. Kite's home in Grant Parish when the offense occurred; second, Armstead was acting in furtherance of his own pursuits when he committed the offense at Ms. Kite's home; third, Ms. Kite was not within the scope of duty of Defendants; and four, Defendants were not the

3

cause in fact of the offense. Therefore, they sought to have the lawsuits against them dismissed with prejudice.

Plaintiffs opposed both Motions for Summary Judgment. They made three basic arguments contending that the Sheriff was independently and grossly negligent: (1) in allowing Armstead to participate in the trusty program considering his extensive and violent criminal history; (2) in failing to properly train Jacobs and Williams; and (3) in failing to follow his policies and procedures and have the City execute a contract to use trusties. They further argued that the Sheriff was vicariously liable for the gross negligence of Jacobs and Williams. Additionally, they argued that the Sheriff and the City were not entitled to the limitation of liability found in La.R.S. 15:708(H) because Armstead was not a prisoner sentenced to a parish prison or a prisoner in a parish prison awaiting transfer to a state correctional facility.

In support of Plaintiffs' contentions, they further relied upon the affidavit of W. Lloyd Grafton ("Grafton"), who they presented as an expert in the field of law enforcement training, actions, policies and procedures; his accompanying deposition; as well as other depositions in the record. After Defendants objected to Grafton's affidavit and depositional testimony on various grounds, but before ruling on the motions for summary judgment, the trial court heard argument on whether Grafton lacked the expertise to offer those opinions and whether his opinions touched on the ultimate issue for the factfinder.

On May 28, 2024, the trial court ruled in favor of the Sheriff and Princeton, as follows:

> After considering the Motions, Memoranda, Exhibits and applicable law and hearing argument, and for the reasons for Judgment given in open court, the Motion for Summary Judgment filed on behalf

4

of Defendants, WILLIAM EARL HILTON, IN HIS FORMER CAPACITY AS SHERIFF OF RAPIDES PARISH and THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY, was granted. However, the claim that THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY provided coverage for Earl L. Williams, Sr., and Henry Jacobs was not before the Court; accordingly, the claims made against THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY for coverage for the claims made against Earl L. Williams, Sr., and Henry Jacobs are not dismissed and remain.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for Summary on the Motion for Summary Judgment brought by Defendants, WILLIAM EARL HILTON, IN HIS FORMER CAPACITY AS SHERIFF OF RAPIDES PARISH and THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY, is hereby granted, dismissing all claims made against Defendants, WILLIAM EARL HILTON, IN HIS FORMER CAPACITY AS SHERIFF OF RAPIDES PARISH and THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY, but only as the insurer for the claims against Defendant, WILLIAM EARL HILTON, IN HIS FORMER CAPACITY AS SHERIFF OF RAPIDES PARISH, with full prejudice, with Plaintiffs to pay the costs of the defendants, WILLIAM EARL HILTON, IN HIS FORMER CAPACITY AS SHERIFF OF RAPIDES PARISH and THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Motion in Limine is hereby granted and that the Affidavit of [W.] Lloyd Grafton be stricken and is not considered in opposition to the Motion for Summary Judgment.

Plaintiffs appealed the judgment of May 28, 2024.

## ASSIGNMENTS OF ERROR

1. Plaintiffs respectfully suggest the Trial Court erred when it granted the Defendants' Motion for Summary Judgment.

2. Plaintiffs respectfully suggest the Trial Court erred when it granted Defendants' Motion in Limine and struck the affidavit of Plaintiffs' expert, W. Lloyd Grafton.

## INTRODUCTION

After the trial court granted the summary judgment in favor of the Sheriff and Princeton, it denied the Joint Motion for Summary Judgment brought by the City,

5

Jacobs, and Williams, and rendered a separate judgment on July 16, 2024. After the trial court's denial of that motion, the City, Jacobs, and Williams applied for supervisory review with this court, seeking to overturn that determination on the grounds that Armstead was not in the process of escaping when the murder-suicide occurred, and Ms. Kite's murder was not an integral part of the escape process. This court denied the writ application, with one judge voting to grant and docket. *Kite v. Rapides Par. Sheriff's Dep't*, 24-376 (La.App. 3 Cir. 10/3/24) (unpublished ruling).

Subsequently, the City, Jacobs, and Williams sought a supervisory writ from the supreme court. Finding merit in the writ application, the supreme court ordered briefing on this matter pursuant to the provisions of La.Code Civ.P. art. 966(H).

## LOUISIANA SUPREME COURT PER CURIAM

Recently, the supreme court issued a per curiam opinion that reversed the trial court's judgment, granted summary judgment in favor of the City, Jacobs, and Williams, and dismissed their claims with prejudice. *Kite v. Rapides Par. Sheriff's Dep't*, 24-1351 (La. 2/28/24), ___So.3d___. Because of the supreme courts analysis in this companion case and as more fully explained hereinafter, we find that it is unnecessary for us to address the suppression of Grafton's affidavit and the applicability of La.R.S. 15:708(H). Finding that neither of those issues are relevant to the scope of duty the Sheriff owed Plaintiffs, we need only address whether the trial court correctly granted summary judgment in favor of the Sheriff and Princeton.

## SUMMARY JUDGMENT

Appellate courts review motions for summary judgment using a de novo standard. *Planchard v. New Hotel Monteleone, LLC*, 21-347 (La. 12/10/21), 332 So.3d 623. An appellate court assesses whether summary judgment is appropriate utilizing the same standard as the trial court to determine "whether there is any

6

genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Id*. at 625.

Initially, the burden of producing evidence at the motion hearing is on the mover, "who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case." *Schultz v. Guoth*, 10-343, p. 6 (La. 1/19/11), 57 So.3d 1002, 1006. Procedurally, therefore, the court's first task is to determine whether the moving party's motion, memorandum, affidavits, and supporting documents are sufficient to resolve all material factual issues. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. "To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact." *Indus. Sand & Abrasives, Inc. v. Louisville & Nashville R.R. Co.*, 427 So.2d 1152, 1154 (La.1983).

In making this determination, the court must closely scrutinize the mover's supporting documents, while treating those submitted by the adverse party indulgently. *Smith*, 639 So.2d 730. Moreover, because the moving party bears the burden of proving the lack of a material issue of fact, we must view all inferences drawn from the underlying facts in a light most favorable to the adverse party. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991).

If we determine that the moving party has met this onerous burden, the burden then shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La.Code Civ.P. art. 966(D)(1). "At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come

forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial." *Babin v. Winn-Dixie La., Inc.*, 00-78, p. 4 (La. 6/30/00), 764 So.2d 37, 39.

As our courts have long held, "summary judgment may be granted when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts before the court." *Smith*, 639 So.2d at 752. However, "[o]nce the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Babin*, 764 So.2d at 40.

We further note that the summary judgment procedure is favored and, by law, shall be construed to accomplish the ends for which it was designed: "to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2).

With these principles in mind, we now turn to Defendants' motion for summary judgment.

**ANALYSIS**

Defendants argue that the Sheriff's duty to protect the public from torts committed by escapees does not extend after the completion of the escape and/or activities unrelated to the escape. Defendants contend that the Sheriff's actions were not the cause in fact of Ms. Kite's death as Armstead had already completed his escape at the time of her death.

In response, Plaintiffs contend that if Armstead escaped for the specific purpose of killing Ms. Kite, there is a genuine issue of material fact about whether Armstead was no longer in the process of escaping when Ms. Kite was killed. Thus,

Plaintiffs assert that this issue is fact sensitive and not appropriate for summary judgment.

In *Kite*, ___So.3d at___, the court stated:

> The leading case addressing the scope of the duty to protect the public from escaped inmates is *Wilson v. State Dept. of Public Safety and Corrections*, 576 So. 2d 490 (La.1991). In that opinion, we explained that although prison authorities have a duty to prevent inmates from escaping, that duty is intended to protect persons from being harmed by escaping inmates while they are in the process of escaping. *Id*. at. 493. We emphasized that the duty is not intended to protect persons from harm inflicted by inmates who have already escaped and who subsequently commit tortious acts in the furtherance of their own pursuits. *Id*. Rather than looking to foreseeability or the proximity of time and distance between the escape and the escapee's offense that caused the injury to his victim, we reasoned the proper question to be answered in determining the scope of the duty is whether the offense occurred during, or as an integral part of, the process of escaping. *Id*.

In the present case, Defendants produced depositional testimony that Armstead: (1) left the City Light Department, his designated worksite, when he stole a City work truck and abandoned it a few blocks from his mother's home in Alexandria; (2) retrieved a gun from underneath his mother's home; and (3) had his cousin, Antonio Calhoun, drive him to the Grant Parish home of his girlfriend, where Mr. Calhoun left with Ms. Kite's three children; and (4) then killed Ms. Kite and then himself. Relying on *Wilson* and reviewing similar evidence in *Kite*, ___ So.3d at___, the supreme court stated, "On its face, this evidence indicates the escape was complete before Mr. Armstead entered Ms. Kite's home." We agree with that assessment.

Under the provisions of La.Code Civ.P. art. 966(D)(1), once Defendants properly supported their motion for summary judgment, the burden shifted to Plaintiffs "to produce factual support sufficient to establish the existence of a genuine issue of material fact[.]" Plaintiffs argue in their memorandum in

opposition to Defendants' motion for summary judgment that the record is void of evidence showing why Armstead killed Ms. Kite. Instead, Defendants suggested that maybe Ms. Kite refused to give Armstead money to further his escape or that Ms. Kite told him that he was not welcome to stay at her home because he was wanted by the police.[1] Addressing these contentions in *Kite*, ___So.3d at ___, regarding the City's duty, the supreme court stated:

> We have long recognized that mere speculation "falls far short of the factual support required to establish that plaintiff will be able to satisfy his evidentiary burden of proof at trial." *Babin v. Winn-Dixie Louisiana, Inc.*, 2000-0078 [p. 5] (La. 6/30/00), 764 So.2d 37, 40. Plaintiffs have produced no evidence which would suggest Mr. Armstead's decision to have his cousin drive him to Ms. Kite's home was integral to the process of escape. Rather, the fact that Mr. Armstead left the worksite and retrieved a gun from his mother's home demonstrates he had successfully escaped custody and had freedom of action at the time he chose to enter Ms. Kite's home. The harm in this case falls outside of the scope of the City's duty to prevent inmates from escaping.

The same analysis is true regarding Defendants' duty to prevent inmates from escaping. We find Defendants have satisfied their burden on summary judgment when they showed an absence of factual support for an essential element of Plaintiffs' claim, namely, that Ms. Kite's murder falls within the scope of Defendants' duty. Thus, summary judgment in favor of Defendants is required.

---

[1] Even though Plaintiffs supported their opposition to Defendants' motion for summary judgment with Grafton's affidavit, nowhere in his affidavit did he address this essential element of proof. For this reason, we find it unnecessary to address whether the trial court erred in finding Grafton's affidavit and depositional testimony could not be considered. Likewise, whether the Sheriff was grossly negligent has no relevance to this issue.

**DISPOSITION**

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Plaintiffs, John Kite, Administrator of the Succession of Johnnie Ketchun Kite, and on behalf of the minor children, Ja'La Wanya Boyd, Ja'Marsha Deon Boyd, and Tauriez Kite.

**AFFIRMED.**